[Crim. No. 13651.    Second Dist., Div. Five.    Feb. 29. 1968.]

THE PEOPLE, Plaintiff and Respondent, v. LEO KREILING, Defendant and Appellant.

Richard S. Buckley, Public Defender, Mel Albaum and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jerold A. Prod, Deputy Attorney General, for Plaintiff and Respondent.

HUFSTEDLER, J.—Appellant appeals from a judgment convicting him of violating section 591 of the Penal Code. The information charged appellant with maliciously obstructing and tampering with the telephone and telephone apparatus connected with the telephone lines of General Telephone Company on August 13, 1966, and with the conviction of three prior felonies. On the People's motion the words of the information "and tamper with" the telephone and telephone apparatus were stricken. Appellant pleaded not guilty and admitted the prior felonies. Appellant's motion to dismiss the information on the ground that the court lacked jurisdiction because the facts showed, if anything, a violation of section 502.7 of the Penal Code, a misdemeanor, was denied. The jury found the appellant guilty as charged. Probation was denied, appellant's motion for a new trial was denied, and appellant was sentenced to state prison for the term prescribed by law.

Appellant contends: (1) Defendant could not be prosecuted for violating section 591 of the Penal Code, a general felony statute, because the offense with which he was charged was controlled solely by section 502.7 of the Penal Code, a special

misdemeanor statute; (2) Penal Code section 591 does not apply to the conduct of the appellant in putting a telephone instrument out of working condition, but solely to damage to or obstruction of a telephone line; and (3) the evidence was insufficient to sustain the jury's implied finding of malice.

### Summary of the Evidence

Appellant had been employed by General Telephone Company as an installer-repairman from October 1, 1957, to April 5, 1961, at which time he was discharged. The company issues to its installer-repairmen special keys to open the upper housing of pay-station telephones. Upon leaving employment of the telephone company the keys issued to such employees must be returned. The company records indicated that appellant had returned his key when he left his employment.

On August 13, 1966, two telephone repairmen, Gardaya and Smith, employed by General Telephone Company, were sent to the Brass Bell, a bar, to repair a pay telephone reported out of order. Gardaya used his key to open the upper housing and noticed that the "return and collect lever" had been moved to one side. With the lever (relay fork) in that position, any money deposited in the telephone would be returned and no calls thereafter could be received or transmitted. Gardaya placed the relay fork in the proper position with his fingers and restored the telephone to service. As he was replacing the upper housing, appellant approached him and told him and Smith that he knew what was wrong with the telephone. Appellant said that he had tripped the relay and used the telephone to make a long-distance call to New York. Appellant had been drinking and was garrulous. He talked to the repairmen about 15 minutes, asking them questions about their work, offered to buy them a drink and told them he could get them a job in Las Vegas. Smith went out to the truck. Appellant asked if Gardaya knew how to make a long-distance call without paying for it. When Gardaya said, "No," he said, "Well, all you have to do is to pull the fork back and trip the lever to one side and when you drop your money in, the operator will hear the signal from the phone, but your money will return." Appellant then produced a special key from his pocket, opened the housing and tripped the relay fork. Gardaya again put the telephone in working condition, replaced the housing and left. Appellant's defense consisted solely of his examination of Smith, who testified that appellant on the evening in question appeared to be intoxicated.

## Penal Code, § 591 Is Not Preempted
## by Penal Code, § 502.7

Appellant contends that he was subject to prosecution solely under the provisions of section 502.7 of the Penal Code, which he characterizes as a special statute, and not under the provisions of section 591 of the Penal Code, which he says is a general statute. Section 591, upon which the information was based, states: "A person who unlawfully and maliciously takes down, removes, injures or obstructs or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any line of telegraph or telephone, or any other line used to conduct electricity, or any part thereof, or appurtenances or apparatus connected therewith, or severs any wire thereof, is punishable by imprisonment in the state prison not exceeding five years, or by a fine not exceeding five hundred dollars ($500), or imprisonment in the county jail not exceeding one year."[1]

Section 502.7 of the Penal Code provides in part: "(a) A person who, knowingly, willfully and with intent to defraud a person providing telephone or telegraph service, avoids or attempts to avoid, or aids, abets or causes another to avoid the lawful charge, in whole or in part, for telephone or telegraph service by any of the following means is guilty of a misdemeanor: . . . (4) By rearranging, tampering with, or making connection with telephone or telegraph facilities or equipment, whether physically, electrically, acoustically, inductively or otherwise, or by using telephone or telegraph service with knowledge or reason to believe that such rearrangement, tampering or connection existed at the time of such use. . . ."

Appellant relies upon the rule: " '[W]here the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.' " *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].

---

[1]Penal Code section 591, as amended in 1967, provides: "A person who unlawfully and maliciously takes down, removes, injures or obstructs any line of telegraph or telephone, or any other line used to conduct electricity, or any part thereof, or appurtenances or apparatus connected therewith, or severs any wire thereof, or makes any unauthorized connection with any line, other than a telegraph or telephone line, used to conduct electricity, or any part thereof, or appurtenances or apparatus connected therewith, is punishable by imprisonment in the state prison not exceeding five years, or by a fine not exceeding five hundred dollars ($500), or imprisonment in the county jail not exceeding one year."

Sections 591 and 502.7 of the Penal Code do not duplicate one another, but each creates a separate and distinct offense. Section 591 penalizes a person who maliciously injures, obstructs or makes any unauthorized connection with a telephone line or the apparatus connected with a telephone line. Penal Code section 502.7 proscribes the use of specified means of conduct to defraud a telephone company of charges for telephone service. A person can violate section 591 without necessarily violating section 502.7. The act of maliciously obstructing telephone apparatus is a violation of Penal Code section 591, but the same act is not a violation of section 502.7 unless the act is done with intent to defraud the telephone company. One can maliciously obstruct a telephone line by tampering with the telephone instrument without entertaining any intention to defraud.

Neither section 591 nor section 502.7 in this context can be considered ''general statutes.'' Section 502.7 is not a more specific enunciation of an offense generally proscribed by section 591. (*Cf. People* v. *Jones* (1964) 228 Cal.App.2d 74, 83-84 [39 Cal.Rptr. 302].) The meaning of the terms ''general'' and ''special'' statutes is apparent upon examining the cases applying the principle upon which appellant relies. In *In re Williamson, supra,* 43 Cal.2d 651, the defendant, who had conspired with another to violate the contractors' licensing statutes, was held chargeable solely with violating section 7030 of the Business and Professions Code, applying specifically to conspiracy to violate the contractors' licensing statutes and not with violating the general conspiracy statute, section 182 of the Penal Code. In *People* v. *Fiene* (1964) 226 Cal.App.2d 305, 307-308 [37 Cal.Rptr. 925], the defendant, who left a restaurant without paying his bill, was erroneously prosecuted under section 667 of the Penal Code (petty theft with a prior felony conviction) instead of under section 537 of the Penal Code (defrauding an innkeeper). In *People* v. *Swann* (1963) 213 Cal.App.2d 447 [28 Cal.Rptr. 830], the court held that a defendant who made unauthorized use of a credit card could not be prosecuted under the general forgery statute (Pen. Code, § 470), but only under the credit card statute (Pen. Code, § 484a). The defendant in *People* v. *Churchill* (1967) 255 Cal.App.2d 448 [63 Cal.Rptr. 312], was erroneously prosecuted for burglary (Pen. Code, § 459) and not for violating the credit card statute (Pen. Code, § 484a, subd. (b)(6)). In *People* v. *Smith* (1967) 248 Cal. App.2d 134 [56 Cal.Rptr. 258], the defendant was prosecuted

704

under general statutes proscribing perjury (Pen. Code, § 118) and a statute penalizing the filing of false statements to receive aid for needy children instead of the special statute (Welf. & Inst. Code, § 11265), which proscribed the filing of a false statement to establish continued eligibility for aid to needy children, the precise act with which the defendant was charged.

One statute does not conflict with another simply because the course of conduct and the state of mind of a particular defendant may permit his conviction under both statutes. For example, if a defendant maliciously tampered with a telephone with the intent to avoid paying for a telephone call, and the manner in which he tampered with the telephone obstructed telephone service on the line, he could be convicted of violating both section 591 and section 502.7 of the Penal Code. Although he could be separately convicted of each offense, he could be punished only for the graver offense because section 654 of the Penal Code prohibits double punishment under such circumstances. (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 18-21 [9 Cal.Rptr. 607, 357 P.2d 839].)

### Construction of Penal Code, Section 591

■ Appellant asks us to construe Penal Code section 591 to apply solely to obstruction or interference with a telephone line as distinguished from the telephone instrument itself. He points out that section 591, as it was initially enacted in 1872, was in turn based on an 1862 statute concerned with physical destruction of telegraph lines and appurtenances to such lines.[2]

The amendments to section 591 since the date of its original enactment have substantially changed the definition of the offense. The statute as it is presently written is not confined to telephone or telegraph lines. It encompasses conduct by which the transmission of telephone and telegraph messages is interrupted by any of the enunciated methods. One who tampers with a telephone instrument in such way as to preclude its use for receiving or placing calls "obstructs . . . any line of . . . telephone . . . or apparatus connected therewith" as effectively as if he physically severed the telephone line.

### Sufficiency of the Evidence

■ The evidence was adequate to sustain the jury's implied finding of malice. ■ The term "malice" is de-

[2]*Matter of Petition of Johnson* (1914) 167 Cal. 142, 143 [138 P. 740], discusses the history of section 591 from 1872 to 1914.

fined in subdivision 4 of section 7 of the Penal Code: "The words 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." "A malicious intent is to be presumed 'from the deliberate commission of an unlawful act, for the purpose of injuring another.' (Code Civ. Proc., § 1962, subd. 1.)" *People* v. *Wells* (1949) 33 Cal.2d 330, 338 [202 P.2d 53].

Direct proof of the state of a defendant's mind is rarely available. ▮▮▮ In this case there was evidence from which the jury could properly have concluded that the appellant deliberately tripped the relay fork, knowing full well that the result would be to put the telephone out of service. That he may also have harbored an intent to defraud the telephone company does not prevent a finding of malice, but rather supports the inference that his conduct was designed intentionally to injure the telephone company. The jury was not obliged to believe that his conduct was activated solely by euphoria induced by his consumption of alcoholic beverages.

The judgment is affirmed.

Stephens, J., and Aiso, J. pro tem.,* concurred.

A petition for a rehearing was denied March 4, 1968, and appellant's petition for a hearing by the Supreme Court was denied April 24, 1968.

*Assigned by the Chairman of the Judicial Council.