[No. E029271. Fourth Dist., Div. Two. Sept. 12, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL MARTIN TAFOYA, Defendant and Appellant.

**COUNSEL**

John E. Roth, Public Defender, and Christine Laicato Bordner, Deputy Public Defender, for Defendant and Appellant.

Dennis L. Stout, District Attorney, and Robert P. Brown, Deputy District Attorney, for Plaintiff and Respondent.

**OPINION**

**RICHLI, J.**—The scope of Penal Code section 591 (section 591)—which makes it a crime unlawfully and maliciously to injure or obstruct a telephone

line "or appurtenances or apparatus connected therewith"—seems to have become a recurring appellate issue. Here, we will hold that the jury could properly find defendant Michael Martin Tafoya guilty under section 591 based on the evidence that, during an argument with his estranged wife, he removed the battery from her cordless phone. This is true even though she was still able to call the police from another phone.

## I

### FACTUAL BACKGROUND

On April 2, 2000, defendant argued with his estranged wife in her home. During the argument, defendant hit her in the face (whether intentionally or accidentally was disputed) while she was holding their two-and-a-half-year-old son. Defendant also threatened to kill her and her boyfriend or to have her beaten up.

At one point, Ms. Tafoya used her cordless phone to call her mother. Defendant knocked the phone out of her hand. After defendant left, Ms. Tafoya found the phone far from where it had fallen; the battery was missing. She used a different telephone in her home to call the police. When the police interviewed defendant, he admitted removing the battery from the phone.

## II

### PROCEDURAL BACKGROUND

Defendant was charged as follows: (1) count 1: spousal battery (Pen. Code, § 243, subd. (e)(1)); (2) count 2: making terrorist threats (Pen. Code, § 422); (3) count 3: misdemeanor child endangerment (Pen. Code, § 273a, subd. (b)); (4) count 4: injuring or obstructing a telephone line or apparatus (Pen. Code, § 591); and (5) count 5: dissuading a witness (Pen. Code, § 136.1, subd. (b)(1)).

The trial court granted defendant's motion for an acquittal (Pen. Code, § 1118.1) on count 3 (misdemeanor child endangerment) and count 5 (dissuading a witness); it denied the motion with respect to count 1 (spousal battery), count 2 (terrorist threats), and count 4 (obstructing a telephone line or apparatus).

With regard to count 4 (obstructing a telephone line or apparatus), the jury was instructed:

"Every person who unlawfully and maliciously takes down, removes, injures, or obstructs any line of telephone, or appurtenances or apparatus connected therewith[,] is guilty of a violation of Penal Code section 591.

"In order to prove this crime, each of the following elements must be proved:

"1. A person took down, removed, injured, or obstructed any telephone line, or appurtenance or apparatus connected to the telephone line; and

"2. That person acted maliciously and unlawfully.

"The words 'malice' and 'maliciously' mean a wish to vex, annoy or injure another person, or an intent to do a wrongful act." (CALJIC No. 1.22 (6th ed. 1996).)

During deliberations, the jury asked two questions. Defendant claims it asked for a definition of "appurtenances" and "apparatus"; and it asked whether "appurtenances" and "apparatus" could refer to a telephone inside a house, or whether, on the other hand, they were limited to an outside telephone line. Defendant fails to support this claim with any citation to the record (Cal. Rules of Court, rules 15(a), 105(c))—for good reason, as the questions themselves are not in the record. All we can tell is that the jury was seeking clarification of the concept of "obstructing" an "appurtenance" or "apparatus." The trial court indicated that, based on *People v. Kreiling* (1968) 259 Cal.App.2d 699 [66 Cal.Rptr. 582], it would instruct the jury that "one who tampers with a telephone instrument in such a way as to preclude its use for receiving or placing calls . . . 'obstructs any line of telephone or apparatus connected therewith.' "

The jury found defendant guilty on count 4 (obstructing a telephone line). It found him not guilty on count 1 (spousal battery) and count 2 (terrorist threats). He was placed on probation.

After the verdict was returned, one juror commented:

"JUROR: I would like to add one thing on [count 4]. It did take a bit of deliberation to kind of clarify that. We felt it possibly could be worded a little bit better and possibly even have added a subsection or something of that nature. We felt if he'd gone out and cut the line physically this would apply more than it did to the situation.

"THE COURT: Clearly, the question that you raised, it wasn't an unexpected question based on the nature of the statute. We had the same

difficulties answering them. Fortunately, a case was found that, at least to my satisfaction, answered the question. [¶] . . . [¶]

"This statute, this originally only encompassed telephone lines because that's all they had.

"JUROR: We kind of had a suspicion about that.

"THE COURT: That's all they had when the statute was written in 1905. It was intended to include telephone lines. So—

"JUROR: Yes. I'm your phone company person so I was having real issues with the law saying this."

Defendant appealed. The appellate division of the superior court reversed. In an opinion certified for publication (case No. CR.A.3641) it held: "[T]he statute is designed to prevent the disabling of public telephone lines. Neither the language of [*People v. Kreiling, supra*, 259 Cal.App.2d 699] nor the statute . . . suggests that section 591 criminalizes vandalizing a private telephone instrument."

On our own motion, to secure uniformity of decision and to settle an important question of law, we ordered the case transferred to this court. (Penal Code, § 1471; Cal. Rules of Court, rule 62(a).)

III

THE SCOPE OF SECTION 591

 Defendant's central contention is that his conduct did not violate section 591.

Section 591 makes it a crime to *"unlawfully and maliciously take*[] *down, remove*[], *injure*[], *or obstruct*[] *any line of* telegraph, *telephone,* or cable television, or any other line used to conduct electricity, or any part thereof, *or appurtenances or apparatus connected therewith,* or sever[] any wire thereof, or make[] any unauthorized connection with any line, other than a telegraph, telephone, or cable television line, used to conduct electricity, or any part thereof, or appurtenances or apparatus connected therewith . . . ." (Italics added.)

*People v. Kreiling, supra*, 259 Cal.App.2d 699 is the lead case—indeed, virtually the only case—involving the definition of "obstruction" of an "apparatus" for purposes of section 591. There, the defendant, a former

telephone repairman, opened up a pay phone and tripped a relay therein so he could make a free long-distance call. This prevented the phone from being used to make or receive other calls, until another repairman came and fixed it. (*Kreiling, supra*, at p. 701.) As a result, the defendant was convicted of violating section 591. (*Kreiling, supra*, at p. 700.)

On appeal, the defendant argued that section 591 applied "solely to obstruction or interference with a telephone line as distinguished from the telephone instrument itself. He point[ed] out that section 591, as it was initially enacted in 1872, was in turn based on an 1862 statute concerned with physical destruction of telegraph lines and appurtenances to such lines." (*People v. Kreiling, supra,* 259 Cal.App.2d at p. 704, fn. omitted.) The court responded: "The amendments to section 591 since the date of its original enactment have substantially changed the definition of the offense. The statute as it is presently written is not confined to telephone or telegraph lines. It encompasses conduct by which the transmission of telephone and telegraph messages is interrupted by any of the enunciated methods. One who tampers with a telephone instrument in such way as to preclude its use for receiving or placing calls 'obstructs . . . any line of . . . telephone . . . or apparatus connected therewith' as effectively as if he physically severed the telephone line." (*Ibid.*)

Here, the appellate division distinguished *Kreiling* on the ground that *Kreiling* dealt with a public telephone. It acknowledged that *Kreiling* defined the offense broadly in terms of disabling a "telephone instrument" (see *People v. Kreiling, supra,* 259 Cal.App.2d at pp. 701, 703, 704), yet it concluded that *Kreiling* "implicitly acknowledges that the statute is designed to prevent the disabling of public telephone lines." We find no such "implicit acknowledgment" in *Kreiling*. Rather, *Kreiling* explicitly stated that section 591 is aimed at "conduct by which the transmission of telephone and telegraph messages is interrupted . . . ." (*Kreiling, supra*, at p. 704.) It reasoned that disabling a telephone interrupts the transmission of messages just as cutting a telephone wire does. (*Ibid.*) We perceive no way to limit this reasoning to public phones.

Moreover, although the Legislature has amended section 591 three times since *Kreiling* was decided (Stats. 1986, ch. 756, § 2, p. 2475; Stats. 1976, ch. 1139, § 248, p. 5131; Stats. 1967, ch. 1509, § 2, p. 3589), it has done nothing to abrogate its holding. ▮ " '[W]hen the Legislature amends a statute without changing those portions of the statute that have previously been construed by the courts, the Legislature is presumed to have known of and to have acquiesced in the previous judicial construction.' [Citations.]" (*People v. Atkins* (2001) 25 Cal.4th 76, 89-90 [104 Cal.Rptr.2d 738, 18 P.3d

660], quoting *People v. Blakeley* (2000) 23 Cal.4th 82, 89 [96 Cal.Rptr.2d 451, 999 P.2d 675].)

█ The appellate division also reasoned that an early statutory predecessor of section 591, enacted in 1862 (Stats. 1862, ch. 262, § 8, p. 290), "specified in detail the component parts of telegraph lines which were protected from destruction, obstruction, or vandalism." In 1872, however, just 10 years later, the Legislature enacted section 591 itself, which at the time provided: "Every person who maliciously takes down, removes, injures, or obstructs any line of telegraph, or any part thereof, or appurtenance or apparatus connected therewith, or severs any wire thereof, is guilty of a misdemeanor." (Former Pen. Code, § 591.) It would appear that, by deleting the previous detailed specifications, the Legislature intended, if anything, to broaden the scope of section 591.

In 1905, the Legislature amended section 591 by inserting the words, "or telephone, or any other line used to conduct electricity . . . ." (Former Pen. Code, § 591, as amended by Stats. 1905, ch. 521, § 1, p. 683.) In 1909, it inserted the words, "or makes any unauthorized connection with . . . ." (Former Pen. Code, § 591, as amended by Stats. 1909, ch. 172, § 1, p. 272.) Finally, in 1986, it inserted the words "or cable television" and "or cable television line." (Stats. 1986, ch. 756, § 2, p. 2475.) Thus, as *Kreiling* noted, subsequent amendments to section 591 have substantially expanded its scope.

The appellate division also discerned "a statutory scheme protecting the infrastructure of transportation and communication." It reasoned that section 591 is entitled "Telegraph, telephone, cable television or electric lines" and is in chapter 15, entitled "Malicious Injuries To Railroad Bridges, Highways, Bridges, And Telegraphs," of title 13, entitled "Of Crimes Against Property," of the Penal Code.

The Penal Code, however, provides that "[d]ivision, chapter, article, and section headings . . . shall not be deemed to govern, limit, modify or in any manner affect the scope, meaning or intent of [its] provisions." (Pen. Code, § 10004; see also *People v. Tufunga* (1999) 21 Cal.4th 935, 948 [90 Cal.Rptr.2d 143, 987 P.2d 168].) Moreover, chapter 15 includes various crimes involving injury to private property, quite distinct from "the infrastructure of transportation or communication." (E.g., Pen. Code, §§ 592, subd. (a) [taking water from an irrigation ditch without the owner's consent], 593a [spiking a tree intended to be harvested].) It even includes crimes involving no injury to tangible property at all. (E.g., Pen. Code, §§ 587c [*fraudulently evading payment of a railway fare*], 593e, subd. (b) [selling or possessing a cable descrambler].)

We conclude that disabling a private telephone can violate section 591. We note, however, that section 591 applies only to one who acts "unlawfully and maliciously." Thus, it does not make it a crime to leave a phone off the hook either negligently or accidentally. (*Kreiling v. Field* (9th Cir. 1970) 431 F.2d 502, 504.) For the same reason, we believe it would not make it a crime to remove the battery from one's own phone to avoid taking calls.

Defendant also makes a somewhat more subtle argument. He argues that section 591 requires some kind of damage which completely prevents access to the telephone *line*. In *Kreiling*, disabling the pay phone presumably also disabled the telephone line to which it was connected. Here, defendant argues, the same telephone line was still accessible from another phone. (Actually, there was no evidence with respect to whether both telephones used the same telephone line. Nevertheless, we may assume, for purposes of our opinion, that they did.)

Section 591 is in the disjunctive; it makes it a crime to injure or obstruct *either* a telephone line "*or* appurtenances or apparatus connected therewith . . . ." (Italics added.) This necessarily means it is a crime to injure or obstruct "appurtenances or apparatus" connected to a telephone line, regardless of whether the defendant injures or obstructs the telephone line itself. (See *People v. Loeun* (1997) 17 Cal.4th 1, 9-10 [69 Cal.Rptr.2d 776, 947 P.2d 1313] ["The Legislature's use of the disjunctive 'or' . . . indicates an intent to designate alternative ways of satisfying the statutory requirements"], cert. den. (1998) 523 U.S. 1129 [118 S.Ct. 1820, 140 L.Ed.2d 957].)

As the People note, under defendant's logic, section 591 would not apply where a would-be robber disables the only telephone in the room where the victim is trapped to prevent the victim from calling for help, just as long as there was another telephone on the same line somewhere else in the house—even if the robber was unaware of it, and even if the victim could not get to it. Surely the Legislature did not intend the result in such a case to turn on whether the other phone was on the same line or a different line. "Because '[w]e can think of no explanation why the Legislature could have desired' this absurd and unjust result, we reject a statutory construction that would produce it. [Citations.]" (*People v. Mendoza* (2000) 23 Cal.4th 896, 911 [98 Cal.Rptr.2d 431, 4 P.3d 265], quoting *People v. Broussard* (1993) 5 Cal.4th 1067, 1077 [22 Cal.Rptr.2d 278, 856 P.2d 1134].)

We conclude that there was sufficient evidence to support defendant's conviction under section 591. Defendant also contends that the trial court erred by responding to the jury's questions by instructing it, in the language

of *Kreiling*, that "one who tampers with a telephone instrument in such a way as to preclude its use for receiving or placing calls . . . 'obstructs any line of telephone or apparatus connected therewith.'" *Kreiling*, however, was controlling, and the trial court's instruction was correct, responsive, and directly applicable to the evidence.

## IV

## DISPOSITION

The judgment of the trial court is affirmed.

Ramirez, P. J., and McKinster, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 12, 2001. Kennard, J., was of the opinion that the petition should be granted.