[No. C044996. Third Dist. Feb. 10, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
CLARK LESLIE McELROY, Defendant and Appellant.

Rodney Richard Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Mary Jo Graves, Assistant Attorneys General, Stan Cross and Janis Shank McLean, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SIMS, Acting P. J.**—In this case, we consider a variety of issues arising out of defendant's convictions for dissuading a victim, in violation of Penal Code section 136.1,[1] and for obstructing a telephone line, in violation of section 591.

Defendant Clark Leslie McElroy was convicted after a jury trial of being a felon in possession of a firearm (§ 12021, subd. (a)(1)), dissuading a victim from reporting a crime (§ 136.1, subd. (b)(1)), obstructing a telephone line (§ 591) and battery on a cohabitant (§ 243, subd. (e)(1)). The trial court sentenced defendant to the upper term of three years for possessing a firearm,

---

[1] Undesignated statutory references are to the Penal Code.

a consecutive sentence of one-third the midterm, or eight months, for dissuading a victim, for an aggregate term of three years and eight months in state prison. With respect to the misdemeanors, the trial court imposed one year for the battery, with credit for time served, and stayed a one-year sentence for obstructing a telephone line pursuant to section 654.

On appeal, defendant contends the jury was not instructed as to all the elements of dissuading a victim, there was insufficient evidence to support his convictions for dissuading a victim and for obstructing a telephone line, and the court unlawfully imposed a $200 parole revocation fine. We affirm.

## BACKGROUND

Daneea Espegren lived with defendant and his daughter. On March 27, 2003, Espegren and defendant woke up around noon and resumed an argument they had had until about 3:00 a.m. the night before. The couple was fighting about money and drugs. Several times during the argument, Espegren asked defendant to leave or to let her leave. Defendant refused to leave or to give her the keys to a car.

Around 2:30 p.m., defendant struck Espegren in the nose with the open palm of his hand, causing pain and swelling. After striking her, he immediately knelt down, apologized and began to cry. The couple then went into the living room to calm down, sitting in opposite ends of the room.

Espegren went into the bedroom to change clothes so she could leave. Defendant, however, grabbed her arm to prevent her from changing clothes and blocked the door so she could not leave. When defendant blocked the door, he put his arm around her body and they both fell to the floor. Defendant also grabbed Espegren's neck, leaving a mark, in an attempt to "keep [her] down" and prevent her from going out the door.

After Espegren was able to get away, the couple went back into the living room. After a "silent period," the argument about money resumed. At one point during this lengthy dispute, Espegren had attempted to call the police by dialing 911. She told defendant that she did not want to argue anymore, she did not want to be there and she did not want defendant there, so if he was going to stay, then she was calling the police. Defendant responded by taking the telephone away from her and hanging it up.

Around 4:00 p.m. or 4:30 p.m., defendant's daughter arrived home from school. Defendant and Espegren were still yelling and arguing. Espegren then tried to telephone her brother to ask him to come get her so she could leave the house. Defendant took the telephone from her and held it above his head while unplugging the telephone with his other hand so she could not use it. When Espegren tried to get the telephone, defendant taunted her by holding it over his head and telling her she could not call anyone and she had to stay. Defendant then placed the telephone on a chair outside the door where she could not get to it. By unplugging this base telephone, the corresponding cordless telephone became nonoperational.

Espegren then saw defendant's cellular telephone sitting on a table. Espegren grabbed the cellular telephone, called 911 and "calmly asked for a civil standby." While she made the call, defendant stood over her yelling at her that she did not need to be doing that. Espegren went to the neighbor's house to wait for the police, who arrived approximately 10 minutes later.

When the police arrived, Espegren told Officer Purdy that defendant had slapped her face, grabbed her arm, and caused them to fall to the floor when he grabbed her in his attempt to prevent her from leaving the bedroom. Officer Purdy noticed the right side of Espegren's face was red and her eye was swollen. The officer also noted a mark on Espegren's neck.

Defendant told the officer that the couple had been in a verbal argument but that there had been no physical contact. Officer Purdy asked defendant why the telephone was unplugged. Defendant responded that it belonged to him so he disconnected it. He also said that, before he disconnected it, he knew Espegren was going to call the police.

Defendant was arrested. Espegren was on searchable probation, gave consent for the officers to search the house, and assisted police in locating a hidden firearm.

Defendant and Espegren had many similar incidents during their relationship, some of which involved mutual violence. On June 21, 2002, the couple engaged in an argument over car keys that escalated into grabbing, pushing, and mutual physical strikes. On July 7, 2002, they had a fight during which defendant picked Espegren up by her neck and dragged her down the hallway. Espegren was arrested on domestic violence charges.

Ruby McElroy, defendant's estranged wife, testified that when she attempted to physically separate from defendant, he twice grabbed her around the throat and threw her into a closet. When she tried to make a telephone call, defendant pushed her against the wall and tore the telephone out of the

wall. As Ruby ran towards the back door, defendant grabbed her by the hair and threw her to the ground. He then placed her in a headlock, bent her arm back and forced her face into the mattress in a manner making it difficult to breathe. When he let her up, she curled up in a corner in the fetal position with her hands covering her face. Defendant yelled at her, grabbed and squeezed her hand very hard and attempted to gouge her eyes with his thumbs. Ruby finally escaped when defendant fell asleep.

## DISCUSSION

### I

### *Dissuading a Victim as Felony*

Defendant contends that, although he was charged and convicted of violation of felonious dissuading of a witness or victim under section 136.1, subdivision (b)(1), the jury was not instructed on the element of "force or fear" as required to sustain a felony conviction. He argues that section 136.1, subdivision (b), which does not require the defendant's use of force or fear, is a misdemeanor provision only and that, in order for a violation of section 136.1 to be a felony, the conviction must be under subdivision (c). He is wrong.

Section 136.1 provides in relevant part: "(a) Except as provided in subdivision (c), any person who does any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] . . . [¶] (2) Knowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law. [¶] . . . [¶] *(b) Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:* [¶] *(1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge.* [¶] (2) Causing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof. [¶] . . . [¶] (c) Every person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under

any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances: [¶] (1) Where the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person." (Italics added.)

■ By its terms, section 136.1, subdivision (b), provides for alternative felony-misdemeanor punishment, as it is punishable "by imprisonment in a county jail for not more than one year or in the state prison." This is classic "wobbler" language.[2] A wobbler offense charged as a felony is regarded as a felony for all purposes until imposition of sentence or judgment. (*People v. Banks* (1959) 53 Cal.2d 370, 381 [1 Cal.Rptr. 669, 348 P.2d 102]; *People v. Superior Court (Perez), supra,* 38 Cal.App.4th at p. 356, fn. 12.) If state prison is imposed, the offense remains a felony; if a misdemeanor sentence is imposed, the offense is thereafter deemed a misdemeanor. (*People v. Banks, supra,* 53 Cal.2d at pp. 381–382; *People v. Superior Court (Perez), supra,* at p. 356, fn. 12.) Effective 1998, subdivisions (a) and (b) were revised from straight misdemeanor status to provide for alternative felony-misdemeanor punishment. (Stats. 1997, ch. 500, § 1 [in subdivisions (a) and (b), substituted "public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison" for "misdemeanor"].)

Defendant relies on *People v. Ortiz* (2002) 101 Cal.App.4th 410 at page 416 [124 Cal.Rptr.2d 92], for the proposition that section 136.1, subdivision (b)(1), is a misdemeanor provision. In *Ortiz,* the defendant was charged with felony dissuasion under section 136.1, subdivision (c)(1), but the jury was not instructed that it had to find the crime involved force or the threat of force. (*Ortiz* at pp. 414, 416.) The Second District Court of Appeal, Division Eight, held that the trial court erred in failing to instruct the jury on the force element. In so holding, the court used broad language suggesting that the element of force or threat of force was what differentiated misdemeanor and felony dissuasion and stating that the failure to instruct on the force element resulted in an instruction of "only the misdemeanor version of the crime." (*Id.* at pp. 415–416.) For the reasons set forth above, we respectfully disagree with this characterization of the statute.

Defendant also relies on *People v. Brenner* (1992) 5 Cal.App.4th 335 [7 Cal.Rptr.2d 260], which discussed the trial court's sua sponte duty to instruct on the "lesser included" offense of "misdemeanor intimidation" under section

---

[2] "[A] wobbler is a special class of crime which could be classified and punished as a felony or misdemeanor depending upon the severity of the facts surrounding its commission." (*People v. Superior Court (Perez)* (1995) 38 Cal.App.4th 347, 360, fn. 17 [45 Cal.Rptr.2d 107].)

136.1, subdivision (b)(1), when the defendant is charged with "felony violation" of section 136.1, subdivision (c)(1). (*People v. Brenner, supra,* at pp. 340–341.) While the court in *Brenner* did make this distinction, defendant's reliance on *Brenner* is misplaced because that case dealt with section 136.1 as written prior to the 1998 amendment that changed subdivisions (a) and (b) from misdemeanors to wobblers.

■ Defendant was charged and found guilty of a felony violation of section 136.1, subdivision (b)(1). The trial court imposed state prison. Thus, defendant was properly convicted of a felony under section 136.1, subdivision (b)(1).

## II

### *Sufficiency of Evidence for Dissuading a Victim*

Defendant contends there was insufficient evidence to support his conviction for dissuading a victim because there was no evidence that he "knowingly and maliciously" dissuaded or attempted to dissuade Espegren from reporting her victimization.

■ Section 136.1, subdivision (b)(1), however, does not require that defendant act knowingly and maliciously. In any event, the jury was nevertheless instructed that defendant's conduct had to be knowing and malicious and there was sufficient evidence to support the jury's verdict.

■ In reviewing a claim of insufficiency of the evidence, we review the record to determine whether it contains substantial evidence from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) The test is whether the trier of fact's conclusions are supported by substantial evidence, i.e., evidence that is reasonable in nature, credible, and of solid value. (*Id.* at p. 577.) We consider the evidence in a light most favorable to the judgment and draw reasonable inferences in support of the judgment. (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1236–1237 [278 Cal.Rptr. 640, 805 P.2d 899].)

During the couple's lengthy fight, defendant had struck Espegren in the nose, grabbed her arm and knocked her down, grabbed her throat, and persistently prevented her from escaping. When she dialed 911, she specifically told defendant she was calling the police. Defendant responded by taking the telephone away and hanging it up, thereby preventing her from contacting the police. Taking the totality of these facts together in the light most favorable to the verdict, the jury could reasonably infer defendant knew

Espegren was attempting to contact the police for assistance and that such contact would likely result in her report of defendant's actions. Thus, by preventing Espegren from calling the police, defendant knowingly and maliciously prevented Espegren from reporting her victimization of domestic violence.

Defendant argues the evidence merely established, at best, that when Espegren called 911 the first time that afternoon, she was probably "merely" going to request a "civil standby." Defendant argues, the fact Espegren told him she did not want to argue or be around each other anymore and the fact she asked for a civil standby the second time she called the police establishes she was not going to report her victimization when she attempted to call the police earlier that day.

First, we point out that a request for a "civil standby" may, as it ultimately did in this case, result in a victim's report of his or her victimization. A civil standby is a situation wherein an officer is present at the request of a party to a civil dispute in order to prevent violence. (See *Shields v. Martin* (1985) 109 Idaho 132, 139 [706 P.2d 21] [civil assist is one in which officer merely monitors a scene to ensure the peace is kept, the officer's function being to stand by in the event trouble ensues]; *Beal for Martinez v. City of Seattle* (1998) 134 Wn.2d 769, 774 [954 P.2d 237] [due to history of violence, civil standby was requested while property was removed from apartment].) Here, Espegren was eventually able to contact the police and requested a civil standby. When the police arrived, she reported her victimization to the officer. Regardless of the label placed on the call, any police response to an ongoing domestic dispute, particularly one involving physical violence, will likely result in the officer's taking a report. Thus, defendant's argument that Espegren was probably "merely" going to request a "civil standby" is to no avail.

Second, Espegren's request for a civil standby did not occur until *after* defendant had twice attempted to prevent her from contacting the police. There was substantial evidence that defendant also attempted to dissuade a victim when he later unplugged the telephone. By defendant's own admission, he knew Espegren was going to call the police when he unplugged the telephone. Nevertheless, he unplugged the telephone, rendering the corresponding cordless telephone inoperable, and told Espegren she could not call anyone and she had to stay. Although Espegren testified that she had initially been attempting to call her brother when defendant unplugged the telephone, she immediately called the police as soon as she had access to defendant's cellular telephone. Although Espegren requested a civil standby when she finally was able to contact the police, the jury could reasonably reject an inference that Espegren's subsequent request for a civil standby caused

defendant to be unaware that her earlier call to law enforcement was to report her victimization.

Thus, sufficient evidence supports defendant's conviction for dissuading a victim.

### III

### *Sufficiency of Evidence for Obstructing a Telephone*

Defendant argues insufficient evidence supports his conviction for obstructing a telephone. (§ 591.) He claims there was no evidence he "unlawfully" removed or obstructed the telephone or telephone line.

Section 591 provides: "A person who unlawfully and maliciously takes down, removes, injures, or obstructs any line of . . . telephone, . . . or any part thereof, or appurtenances or apparatus connected therewith, . . . is punishable by imprisonment in the state prison, or by a fine not exceeding five hundred dollars ($500), or imprisonment in the county jail not exceeding one year." Defendant argues his conduct of unplugging the telephone and placing it out of Espegren's reach did not violate this section because there was nothing unlawful about disabling his own telephone. We disagree.

■ Nothing in section 591 immunizes one who "maliciously takes down, removes, injures, or obstructs" his own phone. The statute refers to "*any* line . . . of telephone . . . ." (Italics added.) "*Any*" line includes a line owned by a defendant.

■ In *People v. Kreiling* (1968) 259 Cal.App.2d 699, 704 [66 Cal.Rptr. 582], the Second Appellate District explained a violation of section 591 "encompasses conduct by which the transmission of telephone and telegraph messages is interrupted by any of the enunciated methods. One who tampers with a telephone instrument in such way as to preclude its use for receiving or placing calls 'obstructs . . . any line of . . . telephone . . . or apparatus connected therewith' as effectively as if he physically severed the telephone line."

In *People v. Tafoya* (2001) 92 Cal.App.4th 220, 227 [111 Cal.Rptr.2d 681], Division Two of the Fourth Appellate District concluded that a defendant violated section 591 when he removed the battery from a cordless telephone. The court rejected defendant's challenge "that section 591 requires some kind of damage which completely prevents access to the telephone *line.*" (*Ibid.*) It was sufficient that defendant blocked the victim's ability to use the telephone. (*Ibid.*) Defendant asks this court to depart from

*Tafoya* and find that violation of section 591 requires he "injure" or "damage" or "disable" the telephone or line in some other way than to remove or obstruct it. By its terms, however, section 591 makes it a crime to "remove" a telephone or telephone line. Thus, we decline to depart from the statutory language and *Tafoya* by adding a requirement of physical damage.

Here, substantial evidence supports defendant's conviction for violating section 591. By disconnecting the telephone, defendant removed it, thereby precluding its use for receiving or placing calls. As explained above, there is sufficient evidence for the jury to conclude that defendant did this act for the purpose of preventing Espegren from calling the police and reporting her victimization. Defendant's attempt to dissuade her from calling the police was only thwarted by Espegren finding his cellular phone. Defendant's conduct was unlawful, as he was attempting to dissuade a victim by removing the telephone, and is legally indistinguishable from removing the battery from a telephone, ripping the wires out of the wall or cutting them. The result of these actions is the same—the telephone cannot be used to make a telephone call and, in this case, to call the police. The conviction was proper.[3]

## IV

### Restitution Fine

Finally, defendant contends that his restitution fine of $600 that was suspended unless parole is revoked pursuant to section 1202.45 must be reduced by $200 because that amount was imposed based on misdemeanor offenses.

At sentencing, the trial court imposed restitution as follows:

"A restitution fine per 1202.4(b) of [$]600; [$]300 for each felony count. A restitution fine suspended—I have to address—lets make it [$]200 for each felony count, [$]100 each for misdemeanor [*sic*] for a total [$]600. Also a restitution fine suspended per 1202.45 in the same amount. Restitution to Daneea Espegren in an amount to be determined."

Defendant argues that, because the trial court specifically assigned $200 of the restitution fine to the misdemeanor counts, and defendant will not be

---

[3] In making his substantial evidence argument, defendant notes that there was no specific jury instruction defining the meaning of "unlawfully." California Rules of Court, rule 14(a)(1)(B) requires that each point in a brief be stated under a separate heading. To the extent defendant complains the jury was not instructed on the meaning of "unlawfully" without a separate heading, defendant has waived any claim of error. (*Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1346 [101 Cal.Rptr.2d 591].)

placed on parole for either misdemeanor offense, that amount must be stricken from the section 1202.45 fine. We disagree.

■ Former section 1202.45 provided: "In every case where a person is convicted of a crime and whose sentence includes a period of parole, the court shall at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4. This additional restitution fine shall be suspended unless the person's parole is revoked."[4] Thus, by its terms, section 1202.45 requires the court to impose a parole revocation fine in the same amount as the section 1202.4 restitution fine. (See *People v. Smith* (2001) 24 Cal.4th 849, 853 [102 Cal.Rptr.2d 731, 14 P.3d 942].)

Section 1202.4, subdivision (b), provides for a single restitution fine in every case:

"(b) In every *case* where a person is convicted of a crime, the court shall impose *a* separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record.

"(1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000) . . . . [¶] (2) In setting a felony restitution fine, the court may determine the amount of the fine as the product of two hundred dollars ($200) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (Italics added.)

Regardless of the trial court's reasoning in setting the restitution fine at $600, the court imposed and the statute authorizes only a single restitution fine in each case. Thus, there was *one* fine of $600 imposed pursuant to section 1202.4. Defendant was sentenced to state prison and, therefore, his sentence allows for parole. Since the parole revocation fine must be in the same amount as the section 1202.4 restitution fine, it was properly set at $600.

---

[4] Section 1202.45 was amended, effective August 16, 2004, to identify the subject fine as a "*parole revocation* restitution fine." (Stats. 2004, ch. 223, § 4; italics added.)

## DISPOSITION

The judgment is affirmed.

Nicholson, J., and Robie, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 18, 2005. Kennard, J., was of the opinion that the petition should be granted.