Filed 11/4/15  P. v. Ramos CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B261805 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA062453) |
| v. | |
| RUBEN SALGADO RAMOS, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daviann L. Mitchell, Judge.  Affirmed.

The Defenders Law Group and Carlos J. Perez for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez, Deputy Attorney General, and Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.

_____

The jury convicted defendant and appellant Ruben Salgado Ramos, Jr. of rape of an unconscious person (Pen. Code, § 261, subd. (a)(4) [count 1]),[1] and three counts of dissuading a witness (§ 136.1, subd. (b)(1) [counts 2-4]).[2] Defendant admitted suffering a prior conviction under the three strikes law (§§ 667, subds. (b)-(i) and 1170.12, subds. (a)-(d)), a prior serious or violent felony conviction (§ 667, subd. (a)), and serving two prior prison terms (§ 667.5, subd. (b)).

After defendant's motion for new trial was denied, the trial court sentenced defendant to 50 years in state prison. As to count 1, the court imposed a sentence of 23 years in state prison, consisting of the upper term of 8 years, which was doubled due to the prior conviction under the three strikes law, and enhanced by 5 years for the serious felony prior conviction pursuant to section 667, subdivision (a)(1), and one year for each of prior prison terms under section 667.5, subdivision (b). As to each of counts 2, 3, and 4, the court imposed consecutive terms of nine years in state prison, comprised of the middle term of two years doubled due to the strike prior conviction, and five-year enhancements based on the serious or violent prior felony conviction under section 667, subdivision (a).

Defendant contends that the trial court erred in denying his motion for new trial because there is insufficient evidence to support his conviction for dissuading a witness as to counts 2 and 4. He also contends that the trial court erred in failing to sua sponte instruct the jury on voluntary intoxication, and in failing to consider his diminished capacity at sentencing.

We affirm.

---

[1] All further statutory references are to the Penal Code, unless otherwise specified.

[2] Defendant was acquitted of oral copulation of an unconscious person. (§ 288a, subd. (f) [count 5].)

**FACTS**

*Prosecution*

At approximately noon on March 19, 2014, Omar Trujillo Perales (Trujillo) received a call informing him that his neighbor, R.H., was at Four Points Liquor Store and needed help. Trujillo drove to the store with his aunt and his friend, Robert Equiha. When they arrived, defendant was having sex with R.H. on an abandoned sofa outside the store. R.H. was unconscious in a seated position on the sofa with her buttocks close to the edge of the couch. Her eyes were closed, she made no noise, and did not move. Her pants were pulled down past her knees. Defendant's pants were down and his penis was inside R.H.'s vagina. Defendant was holding her legs up while moving "back and forth" with his penis inside her.

Trujillo's aunt asked to be taken home. Trujillo drove her home and picked up his mother, Rosario Perales. Trujillo, Equiha, and Perales drove back to the liquor store about 10 minutes later. R.H. was lying on the couch. Defendant had his head by her vagina. He had covered himself, and at first Trujillo could not tell exactly what defendant was doing. At one point, defendant's head was uncovered and Trujillo could see him licking R.H.'s vagina. Trujillo rolled down his window and said, "Hey what the fuck, dude? What are you doin'?" Perales heard her son say, "What are you doing?" and she said, "Let her go. Can't you see she's unconscious?" Defendant fixed his pants and belt. He was calm, and seemed unconcerned about what he had just done. He started walking away.

Equiha, Trujillo, and Perales, the victims respectively in counts 2 through 4, each testified to defendant's conduct after their arrival at the liquor store. Trujillo, Perales, and Equiha exited Trujillo's vehicle and walked toward R.H. Perales told defendant to leave R.H. alone. Defendant became aggressive, using "foul language" with them. He said, "This is none of you guys' business . . . . why are you guys getting into this?" Perales told defendant they were going to call the police. Trujillo used his cell phone to

3

call 911. Defendant became angry when he saw Trujillo dialing his phone. He picked up a "2 x 4" and moved toward Trujillo, but Equiha and Perales were in front of Trujillo and would not let defendant get past them. Defendant threatened to hit Perales with the 2 x 4. Defendant told Perales that she was a meddling old woman, to go back, do her chores at home, and to get out of there. Defendant said, "What is he doing? What is this snotty kid doing," "Is he calling the cops? . . . If he is, he's going to get it coming." Defendant then said, "Oh you're a little snitch." He threatened, "I have a family member in the military . . . he's going to come and beat you up . . . Get you guys." Perales heard defendant say that he had a cousin in the army and that he would have him come and beat them up. Defendant appeared to be trying to see the license plate number of Trujillo's van. Trujillo saw him typing something into his cell phone. They were able to carry R.H. to the back of Trujillo's van. They left the area quickly because defendant was chasing them with the 2 x 4. R.H. did not regain consciousness while they were driving.

Trujillo's 911 call was played for the jury.[3] Trujillo told the dispatcher that defendant was trying to hit "them" with a 2 x 4. While Trujillo was on the phone, defendant's brother "Mikey" arrived, and defendant called out to him for help. Trujillo said, "He's trying to fight us, 'cause there's a, there's a lady that's passed out over here, and he's, like, having sexual relations with her. Um, so we just wanted to let you guys know," "she's like passed out drunk," "[t]he guy's drunk, too," "he just got a stick, and he just threw it."

Detective Ryan Diez of the Los Angeles County Sheriff's Department responded to the incident. He saw R.H. lying unconscious in a van. She was transported the hospital, where she remained unconscious for about two hours.

R.H. testified that she could not identify defendant. She recalled drinking on the date of the incident, sitting on a sofa at the back of the liquor store, and being in the hospital, but did not recall having sexual intercourse.

---

[3] The recording was in Spanish, and an English translation was prepared for the jury. Trujillo testified that it was his voice on the phone.

4

*Defense*

Defendant did not present any witnesses or testify in his own defense.

**DISCUSSION**

*Insufficient Evidence of Dissuading a Witness as to Equiha and Perales (Counts 2 and 4)*

Defendant argues the trial court erroneously denied his motion for new trial, which was made on the basis that there was insufficient evidence to support his conviction for dissuading a victim as to Equiha (count 2) and Perales (count 4). We disagree.

"In reviewing a claim of insufficiency of the evidence, we review the record to determine whether it contains substantial evidence from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) The test is whether the trier of fact's conclusions are supported by substantial evidence, i.e., evidence that is reasonable in nature, credible, and of solid value. (*Id.* at p. 577.) We consider the evidence in a light most favorable to the judgment and draw reasonable inferences in support of the judgment. (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1236-1237.)" (*People v. McElroy* (2005) 126 Cal.App.4th 874, 881.)

"Section 136.1, subdivision (b)(1), provides in relevant part, '(b) . . . [E]very person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense . . . . [¶] (1) Making any report of that victimization to any peace officer or state or local law enforcement officer . . . .'" (*People v. Galvez* (2011) 195 Cal.App.4th 1253, 1259, italics omitted.)

5

The record contains substantial evidence that Equiha, Trujillo, and Perales each participated in alerting law enforcement to the commission of a sexual assault of an unconscious person. Perales told her son to call the police. Perales and Equiha stood between defendant and Trujillo in order to prevent defendant from interfering with the 911 call. Defendant's conduct demonstrated that he knew the emergency call was being placed, and that the witnesses intended to report him to the police. In response he verbally and physically threatened the three civilian witnesses, stating, "This is none of you guys' business . . . why are you guys getting into this?" Defendant used foul language. He called Perales a meddling old woman and told her to go home. Defendant directed a threat at all three witnesses, telling them, "I have a family member in the military . . . he's going to come and beat you up . . . . Get you guys." Defendant first picked up a rock and then threatened all three with a 2 x 4. Trujillo's 911 call indicated that defendant was trying to hit "them" with the 2 x 4. The witnesses quickly left the scene to avoid injury.

Viewing the evidence in the light most favorable to the verdicts, we have no difficulty concluding that substantial evidence supports the verdicts on counts 2 and 4.

### *Duty to Instruct on Voluntary Intoxication*

Defendant contends that the trial court erred in failing to sua sponte instruct the jury on voluntary intoxication with CALJIC No. 4.21 (Voluntary Intoxication – When Relevant to Specific Intent). He argues that defendant was drunk and "most likely" drugged at the time of the alleged crimes, and that the court should have known he was "not acting as a normal person."[4] Defendant concedes that he did not request an instruction on voluntary intoxication.

---

[4] The only evidence that defendant was intoxicated was Trujillo's statement in the 911 call that "[t]he guy's drunk."

6

A trial court has a duty to instruct sua sponte on "general principles of law that are commonly or closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case. [Citations.] The trial court is charged with instructing upon every theory of the case supported by substantial evidence, including defenses that are not inconsistent with the defendant's theory of the case. [Citations.]" (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047.)

Under the current state of the law, evidence of voluntary intoxication is admissible solely for the purpose of determining whether the defendant actually formed a required specific intent. (*People v. Saille* (1991) 54 Cal.3d 1103, 1117 (*Saille*).) Voluntary intoxication "is proffered in an attempt to raise a doubt on an element of a crime which the prosecution must prove beyond a reasonable doubt." (*Id.* at p. 1120.) The court therefore has no sua sponte duty to give "instructions regarding the actual effect of the defendant's voluntary intoxication on his relevant mental state . . . . (See also *People v. Castillo* (1997) 16 Cal.4th 1009, 1014.) Instead, these instructions are more in the nature of pinpoint instructions required to be given only on request where the evidence supports the defense theory. (*Ibid.*; *Saille, supra,* 54 Cal.3d at p. 1119.)" (*People v. Ervin* (2000) 22 Cal.4th 48, 90-91.)

The trial court properly instructed on the general principles of law applicable to counts 2 through 4, including the required specific intent pursuant to CALCRIM No. 252: "The following crimes require a specific intent or mental state: Dissuading a witness, as charged in counts 2 through 4. For you to find a person guilty of these crimes, that person must not only intentionally commit the prohibited act, but must do so with the specific intent. The act and the specific intent required are explained in the instruction for that crime." The jury also received a modified version of CALCRIM No. 2622, advising that defendant could only be found guilty if he "knew he was trying to prevent or discourage [the witnesses] from reporting victimization and intended to do so." These instructions satisfied the court's sua sponte duties.

As noted above, an instruction on voluntary intoxication need not be given sua sponte.[5] Defense counsel did not request a pinpoint instruction on the point. The court did not err by failing to give CALJIC No. 4.21.[6] (See *Saille*, *supra*, 54 Cal.3d at p. 1119.)

### *Considerations in Sentencing*

Defendant contends that the trial court erred by failing to consider his diminished capacity due to intoxication as a mitigating factor in sentencing. He further argues that because the evidence was insufficient to support the verdicts in the dissuading a witness counts with respect to Equiha and Perales (counts 2 and 4), and imposition of the sentences would amount to multiple punishment, we must determine de novo whether all three consecutive terms for violation of section 136.1 should be imposed. We conclude that the trial court did not abuse its discretion or err in sentencing.

#### **Diminished Capacity**

At the sentencing hearing, defense counsel inartfully requested that the court consider that "[defendant] may have been the person that [R.H.] may have wanted to." The court asked what the assertion was based upon, and counsel responded, "[B]ased on that him being under the influence of alcohol at the time. [¶] [¶] [¶] [¶] Well in terms of him being the person that suffered from this alcoholism and something that he may have . . . . [¶] [¶] [¶] [¶] It's something considering he did something from the past and the court should consider that in terms of striking the strike and sentencing in this case . .

---

[5] The trial record contains no evidence that defendant's ability to form the required specific intent was affected by intoxication.

[6] The trial court utilized the official instructions drafted by the Judicial Council's Advisory Committee on Criminal Jury Instructions (CALCRIM), rather than CALJIC.

8

. [to allow defendant] to learn from his mistakes and at the same time just like I believe our government and our court had the intent to rehabilitate on this case as well."

The trial court responded, "I take it the advisement has been made to him and in his past. One moment. I am looking here. Five, six, seven, eight, nine, ten convictions and [he] has not taken advantage of any of those things to rehabilitate including state prison on multiple occasions that you know of and you don't include his parole violation. It would be different this time?"

Defense counsel explained that this time was different because he had spoken to defendant in prison and would make sure he followed his "plan."

The trial court noted the proffered mitigating circumstances later in the sentencing hearing, stating: "He picked up two drunk in public after that and he has occurrences and I would agree with you he has a long-term history of alcoholism and drugs but that is in no way an excuse to what he did . . . . I think he took advantage of this woman completely because she was passed out . . . . The people came to her and he went after them as well . . . . I recognize that might be a reason to strike the strike."

With respect to count 1, rape of an unconscious person, the court selected the upper term of eight years. Following sentencing, the trial court addressed defendant: "You thought it was okay and to have sex with a woman who was unconscious, and I recognize you have a disease of alcoholism and as well and you're an addict. But there's no excuses for what you have done."

A trial court's sentencing decision is subject to review for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' [Citation.]" (*Ibid*.) A trial court abuses its discretion "if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid*.) A single factor in aggravation may support imposition of an upper term. (*People v. Castellano* (1983) 140 Cal.App.3d 608, 615.)

9

Rule 4.409 of the California Rules of Court[7] provides that "[r]elevant criteria enumerated in these rules must be considered by the sentencing judge, and will be deemed to have been considered unless the record affirmatively reflects otherwise." The enumerated factors in mitigation of a crime include consideration of whether "[t]he defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime." (Rule 4.423(b)(2).) Section 25, subdivision (c) provides that "evidence of diminished capacity or of a mental disorder may be considered by the court . . . at the time of sentencing or other disposition or commitment."

Diminished capacity due to alcoholism or drug use may be a mitigating factor, depending upon the circumstances. (*People v. Reyes* (1987) 195 Cal.App.3d 957, 960 (*Reyes*); *People v. Regalado* (1980) 108 Cal.App.3d 531, 538-540 (*Regalado*).) In *Regalado,* the appellate court upheld the "sentencing court's implicit conclusion that defendant's drug use did not influence the commission of the burglary to an extent that 'partially excused' its commission [,]" in part because although the defendant's substance abuse problem was a longstanding one, the defendant had failed to take advantage of opportunities to address it. (*Regalado*, *supra*, at p. 539.) Similarly, in *Reyes* the court held: "As a policy matter, when a defendant has a drug addiction or substance abuse problem, where the defendant has failed to deal with the problem despite repeated opportunities, where the defendant shows little or no motivation to change his life style, and where the substance abuse problem is a substantial factor in the commission of crimes, the need to protect the public from further crimes by that individual suggests that a longer sentence should be imposed, not a shorter sentence. For example, the felony drunk driver who is suffering from an uncontrolled alcoholism should be sentenced to a longer term, not a shorter one, in order to prevent him from driving under the influence again." (*Reyes*, *supra*, at p. 963.)

Here, the trial court considered defendant's argument that his alcoholism and intoxication could be mitigating factors, but expressly rejected the point. (See *Regalado*,

---

[7] All citations to rules are to the California Rules of Court.

*supra*, 108 Cal.App.3d at 538 [trial court did not err in determining that defendant's addiction to narcotics had no mitigating value].) As in both *Reyes* and *Regalado*, defendant had multiple opportunities to seek treatment. After 10 prior convictions defendant had not taken advantage of any rehabilitative services, nor did he show any inclination to change his lifestyle. Importantly, there was no evidence that defendant's purported voluntary intoxication in any way diminished his responsibility in this case. The mere statement in Trujillo's 911 call that defendant was drunk provides no basis for mitigating punishment. The court did not abuse its discretion.

Defendant's extensive recidivism includes numerous convictions and a contemporaneous parole violation. These aggravating circumstances provide ample support for imposition of the upper term. (See Rule 4.421 (b)(2), (3), (4), (5) & (c).)


## Insufficient Evidence and Multiple Punishment

Defendant's contention that we should modify the sentences in counts 2 and 4 for dissuading a witness lacks merit. First, as discussed above, the convictions in counts 2 and 4 are amply supported by substantial evidence in the record.

Second, defendant's reliance on section 654's bar against multiple punishment when a course of conduct comprises an indivisible transaction is without merit. Defendant was convicted of four offenses involving four separate victims, rendering section 654 inapplicable. "We have long held that 'the limitations of section 654 do not apply to crimes of violence against multiple victims.' (*People v. King* (1993) 5 Cal.4th 59, 78.)" (*People v. Oates* (2004) 32 Cal.4th 1048, 1063.)

As defendant concedes, the court had no discretion with respect to the length of the sentences on counts 2 and 4 or with respect to whether they should be imposed consecutively. Defendant's section 136.1 convictions were subject to the mandatory provisions of section 1170.15, which provides: "Notwithstanding subdivision (a) of Section 1170.1 which provides for the imposition of a subordinate term for a consecutive offense of one-third of the middle term of imprisonment, if a person is convicted of a

11

felony, and of an additional felony that is a violation of Section 136.1 or 137 and that was committed against the victim of, or a witness or potential witness with respect to, or a person who was about to give material information pertaining to, the first felony, or of a felony violation of Section 653f that was committed to dissuade a witness or potential witness to the first felony, the subordinate term for each consecutive offense that is a felony described in this section shall consist of the full middle term of imprisonment for the felony for which a consecutive term of imprisonment is imposed, and shall include the full term prescribed for any enhancements imposed for being armed with or using a dangerous or deadly weapon or a firearm, or for inflicting great bodily injury." (§ 1170.15.) A violation of section 136.1, subdivision (b)(1) is punishable by a state prison sentence of 16 months, 2 years, or 3 years. (§ 18, subd. (a).) The trial court properly imposed the middle term of two years to run consecutively as to counts 2 and 4.

## DISPOSITION

The judgment is affirmed.


KRIEGLER, J.

We concur:


MOSK, Acting P. J.


BAKER, J.