Filed 7/30/13  In re I.D. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| In re I.D., a Person Coming Under the Juvenile Court Law. | |
| | D063120 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J232412) |
| v. | |
| I.D., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard R. Monroy, Judge.  Affirmed in part; reversed in part.

Robert Booher, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

The San Diego County District Attorney filed a juvenile petition under section 602 of the Welfare and Institutions Code, alleging I.D. attempted to dissuade a witness from reporting a crime in violation of Penal Code section 136.1, subdivision (b)(1)[1] (count 1) and obstructed a telephone in violation of section 591 (count 2). Finding both charges true beyond a reasonable doubt, the juvenile court adjudged I.D. a ward of the court and granted probation. On appeal, I.D. contends (1) there was insufficient evidence to sustain a true finding on count 1; (2) the juvenile court erred in failing to stay count 2 under section 654; and (3) the weapons condition imposed as part of her probation lacks an explicit knowledge requirement and is thereby unconstitutionally vague. We modify the judgment to stay the execution of count 2 and modify the probation condition as specified in the disposition. In all other respects, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual Background*

On October 26, 2012, Officer Patron and her partner were dispatched to I.D.'s home to assist a probation officer. I.D.'s twin sister was on probation, and the probation officer had gone to the home to take the sister to a meeting at school. After I.D. became uncooperative and intrusive, the probation officer called for additional officers to come keep the peace. Once the probation officer took the sister to her meeting, Officer Patron and her partner left the residence.

---

[1] All further statutory references are to the Penal Code.

A few hours later, Officer Patron returned to I.D.'s home with a Psychiatric Emergency Response Team (PERT) clinician after receiving a call from a neighbor reporting a loud argument. I.D. and her sister had gotten into an argument over money. The sister had taken off, and while the officers spoke with I.D., their mother arrived home. According to Officer Patron, the mother was upset, crying, and shaking, saying her daughters were out of control and disrespectful. I.D. yelled and swore at her mother, blaming her for I.D.'s problems. After the PERT clinician spoke with I.D., the officers left the home.

Less than five minutes later, Officer Patron received a third call to return to I.D.'s home. The neighbor had called again to report another argument. While the neighbor was on the line, sheriff's dispatch learned they had received a 911 hang-up call from I.D.'s home. Dispatch tried to call back, but there was no answer. When Officer Patron returned to the home, I.D. had left and her mother was crying. Her mother said once the officers left, I.D. "went crazy" and started blaming their mother for the sister going back to juvenile hall. According to Officer Patron, her mother stated that I.D. had said, "It's your fault that my sister is going back to Juvenile Hall," and made an assaultive gesture. When her mother went to call the police, I.D. took the phone out of her hands and ripped it out of the wall. Her mother then went to her neighbor's house, and the neighbor called 911. Officer Patron observed a disconnected phone on the ground inside the home. Officer Patron told their mother she could report her daughters as runaways, but she declined. The officers then concluded their contact.

3

The following morning, Officer Patron returned to I.D.'s home for a fourth time after the neighbors again reported hearing a loud argument. Seeing a mark above I.D.'s eye and scratches on the sister's face, Officer Patron learned I.D. and her sister got into an altercation over money again. At that point, Officer Patron took I.D. and her sister into custody.

B. *The Jurisdictional Hearing*

The district attorney filed a petition under Welfare and Institutions Code section 602, alleging I.D. had violated section 136.1, subdivision (b)(1) by attempting to prevent or dissuade a victim or witness of crime from making a report of that victimization and violated section 591 by maliciously obstructing or injuring a telephone. At the jurisdictional hearing, only I.D.'s mother and Officer Patron testified as witnesses; neither side presented any other evidence. The two witnesses offered conflicting testimony. For example, I.D.'s mother testified that she never called 911, while Officer Patron testified that the dispatcher received a 911 hang-up call from her residence. Officer Patron testified that her mother had reported I.D. making an assaultive gesture while yelling, "It's your fault that my sister is going back to Juvenile Hall," but her mother testified I.D. said calmly, "If the police come, they are going to take my sister to Juvenile Hall because she's on probation" and never took a swing at her. Officer Patron testified to I.D.'s mother reporting that I.D. had ripped the phone out of her hands and the wall, but her mother denied any attempt by I.D. to interfere with a phone call. Both witnesses also presented conflicting testimony as to what kind of phone the mother owns and whether it was properly connected when Officer Patron returned to the scene.

4

C. *The Court's Ruling*

The court found I.D.

> "did cause or obstruct . . . the phone from being used by the mother. And I believe the People have proven that beyond a reasonable doubt, that on that day, on the 26th of October, I.D. obstructed the use of that phone, and she did so for the reasons that would be resulting in Count 1, which was, she did not want the mother to report a probation violation. That came directly from the mother and I believe that to be the only truthful part of that testimony."

The court then found section 654 did not apply. I.D.'s counsel argued that because the court found I.D. removed the phone for the purpose of dissuading her mother from reporting the probation violation, there was only one act that violated two separate statutes, thus triggering the application of section 654 to stay one of the counts. The People argued there were two separate acts—the verbal dissuasion of the mother and then the obstruction of the phone. The court agreed, noting the two counts did not share an element. The court then imposed a term of one year four months.

D. *The Dispositional Hearing*

At the dispositional hearing, I.D.'s counsel again raised the section 654 issue and the following conversation ensued:

> "THE COURT: I understand your position on . . . the maximum term. I just see this as two separate offenses. Your argument is that they arise out of one continuous course of conduct, but the elements of [the] offenses are not mutually inclusive so I don't understand the argument for a [stay under section] 654 then, because it's two completely separate crimes. And I'm not talking about the temporal element of the crime, I'm talking about the specifics of the charges.
>
> "[I.D.'S COUNSEL]: Well, again, I didn't try the case, but it's my understanding that if it's one object, then [section] 654 should apply.

5

"THE COURT: One object. It's one object in the phone, but the
other one was to the mother."

The court went over I.D.'s probation conditions and placed her with her mother but with

permission to live at her aunt's house.

DISCUSSION

## I.  *SUFFICIENCY OF THE EVIDENCE*
### (*COUNT 1*: *SECTION 136.1*, SUBDIVISION (*b*)(*1*))

I.D. first contends the court's true finding on count 1 violates her due process

rights because there was insufficient evidence that she acted to dissuade a witness from

reporting a crime or probation violation under section 136.1, subdivision (b)(1).

Specifically, I.D. contends there was no evidence of her specific intent to dissuade her

mother from reporting a crime and no evidence that her mother was a victim or witness to

a crime.  We reject both of these contentions.

### A.  *Standard of Review*

The prosecution has the burden of proving every element of a crime beyond a

reasonable doubt.  (*People v. Cuevas* (1995) 12 Cal.4th 252, 260.)  If the evidence is

insufficient to convince a trier of fact beyond a reasonable doubt of the existence of every

element of the offense, the conviction or juvenile adjudication must be reversed.

(*Jackson v. Virginia* (1979) 443 U.S. 307, 316.)  Viewing the evidence in the light most

favorable to the judgment and drawing all reasonable inferences to support it, this court

will  determine whether the trier of fact's conclusions are supported by substantial

evidence, i.e., evidence that is reasonable, credible, and of solid value.  (*People v.*

*McElroy* (2005) 126 Cal.App.4th 874, 881.)  The test is not whether the evidence actually

6

establishes guilt beyond a reasonable doubt, but whether *any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt.  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11, italics added.)

"'"'"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."'"'"  (*People v. Rodriguez, supra,* 20 Cal.4th at p. 11.)  "'[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'"  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  It is not our function to reweigh the evidence or reevaluate a witness's credibility.  (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

B.  *Section 136.1, Subdivision (b)(1) and Applicable Legal Principles*

Section 136.1, subdivision (b)(1) provides:

> "[E]very person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] (1)  Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge."

For purposes of this section, a witness is "any natural person, (i) having knowledge of the existence or nonexistence of facts relating to any crime . . . ," and a victim is "any natural person with respect to whom there is reason to believe that any crime  . . . is being or has been perpetrated or attempted to be perpetrated."  (§ 136, subds. (2), (3).)  A report means

7

"notifying the authorities that the crime has occurred and providing information about the offense."  (*People v. Fernandez* (2003) 106 Cal.App.4th 943, 948.).

"Section 136.1, subdivision (b)(1) targets prearrest efforts to prevent a crime from being reported to the authorities."  (*People v. Navarro* (2013) 212 Cal.App.4th 1336, 1347.)  The prosecution must prove "'(1) the defendant has attempted to prevent or dissuade a person (2) who is a victim or witness to a crime (3) from making [a] report . . . to any [designated official].'"  (*Ibid.*)  This section is a specific intent crime, which requires the prosecution to additionally prove the defendant "'intended to affect or influence a potential witness's or victim's testimony or acts.'"  (*Ibid.*)  Intent is rarely established by direct evidence; rather, the trier of fact infers intent from all the facts and circumstances surrounding the crime.  (*People v. Lewis* (2001) 25 Cal.4th 610, 643.)

C.  *Analysis*

1. *Whether there was sufficient evidence to establish intent*

I.D. contends the evidence did not establish she had the specific intent to dissuade her mother from reporting a crime.  She contends her statement that it was her mother's fault her sister was going to juvenile hall shows only that she was upset with her mother's actions, not that she wanted to prevent her mother from reporting a crime.  We conclude the court could properly find intent based on the circumstances surrounding the crime.

Reviewing the evidence in the light most favorable to the judgment and indulging all reasonable inferences, there is substantial evidence to find that I.D. intended to affect her mother's acts.  The evidence showed I.D. was upset and concerned that further contact with the police would result in her sister returning to juvenile hall.  The

8

combination of I.D.'s actions and words permit a reasonable inference that I.D. specifically intended to affect her mother's actions—to prevent her from calling the police to report the sister's probation violation.

While her mother's testimony denied any yelling or assaultive gestures from I.D., the court did not find that evidence to be truthful or credible. "'It is the trier of fact, not the appellate court, that must be convinced of a defendant's guilt beyond a reasonable doubt.'" (*People v. Redrick* (1961) 55 Cal.2d 282, 289.) The trier of fact is in the best position to observe a witness's demeanor, tone of voice, and body language, which may convince the trier of fact that some portions of the testimony are true and some portions are false. The only portion of her mother's testimony that the court believed was that I.D. said, "If the police come they are going to take my sister to Juvenile Hall because she's on probation." The court was well within its authority to assess and weigh the testimonies as it did. Its evaluation of the evidence supports a finding of I.D.'s specific intent to dissuade her mother from reporting a probation violation to the police.

2. *Whether there was sufficient evidence to show I.D.'s mother was a victim or witness to a crime.*

I.D. also contends her mother was not a witness to a crime for section 136.1 purposes because the evidence does not show a crime had actually been committed or that her mother was actually going to report a crime. The moments preceding Officer Patron's return involved an argument between I.D. and her mother. Since the sister was not present and did not get into any subsequent fights, I.D. contends there was no crime

9

for the mother to report. I.D. contends the evidence shows the mother tried to call police only to get help in dealing with her unruly child. We reject these contentions as well.

Her mother qualifies as a witness for section 136.1 purposes because she had knowledge of the existence of facts relating to a crime. She knew that the police previously came to her home because her two daughters were fighting. She also knew I.D.'s sister was on probation and that fighting with I.D. would violate the conditions of her probation. The fact that the probation violation did not occur immediately prior to her attempt to call the police does not affect her status as a witness. Section 136 defines "witness" as a person with knowledge of facts relating to *any* crime without any restrictions as to when the crime must occur. Likewise, section 136, subdivision (b)(1) does not apply solely to those persons attempting to dissuade a witness from reporting a crime that occurred immediately before that witness tried to make her report. Thus, there was substantial evidence for the court to conclude I.D.'s mother qualified as a witness under the relevant statutes.

I.D.'s contention that her mother called the police to help her deal with her unruly daughter is also unavailing. The Third District faced a similar argument in *People v. McElroy*, *supra*, 126 Cal.App.4th at page 882. The defendant there argued the victim was not going to report her victimization, but "was probably 'merely' going to request a 'civil standby.'" (*Ibid.*) The court noted a civil standby is "a situation wherein an officer is present at the request of a party to a civil dispute in order to prevent violence." (*Ibid.*) The court rejected the defendant's argument, reasoning "[r]egardless of the label placed on the call, any police response to an ongoing domestic dispute . . . will likely result in

10

the officer's taking a report." (*Ibid.*) Similarly, if I.D.'s mother had called the police merely to get assistance in dealing with her uncontrollable daughter, the situation likely would have resulted in her reporting her other daughter's probation violation or I.D. taking a swing at her. According to Officer Patron's testimony, her response to the domestic dispute did, in fact, result in her mother reporting I.D.'s assaultive gesture and obstruction of the phone. Furthermore, the court could reasonably infer I.D. believed her mother wanted to call the police to either report her or her sister and tried to stop her by making the statement about juvenile hall and obstructing use of the phone.

The trial court had substantial evidence to conclude the prosecution had established every element for a section 136.1, subdivision (b)(1) violation. The evidence viewed in the light most favorable to the judgment showed that I.D.'s mother was a witness to a crime for purposes of this section and that I.D. acted with the specific intent to prevent her mother from reporting the crime.

## II. *APPLICABILITY OF SECTION 654*

I.D. next contends the trial court erred in refusing to stay count 2 (obstructing a telephone) under section 654 because her multiple convictions were part of an indivisible transaction. She contends that because the court found her intent in ripping the phone away from her mother and out of the wall was to prevent her mother from calling the police, her violation of section 591[2] had the same intent and objective as her violation of

---

2      Section 591 states: "A person who unlawfully and maliciously . . . removes . . . or obstructs any line of . . . telephone . . . or severs any wire thereof . . . is punishable by imprisonment pursuant to subdivision (h) of Section 1170, or by a fine not

11

section 136.1, subdivision (b)(1) and, therefore, must be stayed. We agree and modify the judgment to stay count 2.

A. *Standard of Review*

"Whether multiple convictions are part of an indivisible transaction [under section 654] is primarily a question of fact." (*People v. Martin* (2005) 133 Cal.App.4th 776, 781.) A trial court's determination that a defendant held multiple criminal objectives will be upheld on appeal if it is supported by substantial evidence. (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.) "'We must "view the evidence in a light most favorable to the respondent and presume in support of the [sentencing] order the existence of every fact the trier could reasonably deduce from the evidence."'" (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312-1313.)

B. *Section 654 and Applicable Legal Principles*

Section 654, subdivision (a) provides:

> "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

The purpose of this section is to ensure that punishment is commensurate with culpability. (*People v. Kramer* (2002) 29 Cal.4th 720, 723.) Section 654 prohibits double punishment for multiple offenses that arise out of one indivisible transaction.

exceeding five hundred dollars ($500), or imprisonment in the county jail not exceeding one year."

12

(*People v. Hicks* (1993) 6 Cal.4th 784, 789.)  Whether a course of conduct is indivisible depends on the defendant's intent and objective, not the temporal proximity of the offenses.  (*Ibid.*)  If all the criminal acts were incident to one objective, then punishment may be imposed for only one of the offenses committed.  (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507.)  Stated otherwise, "[w]here the commission of one offense is merely "'a means toward the objective of the commission of the other,'" section 654 prohibits separate punishments for the two offenses."  (*People v. Wynn* (2010) 184 Cal.App.4th 1210, 1215.)  If, however, the defendant entertained multiple, distinct criminal objectives within an indivisible course of conduct, then he or she may be separately punished for each offense.  (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 267-268.)

For example, this court held in *People v. Wynn, supra,* 184 Cal.App.4th at page 1216 that there was substantial evidence to support that the defendant had separate objectives in committing burglary and assault.  The defendant in that case stole a carton of cigarettes from a store.  When the loss prevention officer asked the defendant to come back, the defendant threw down the cigarettes and swung nunchakus at the officer. (*Ibid.*)  Rejecting the defendant's argument that he committed both offenses with the single intent and objective to commit burglary and escape, this court found substantial evidence to determine the defendant's objective in the burglary was stealing cigarettes and his objective in the assault was to avoid being arrested for stealing.  (*Id.* at pp. 1215-1216.)  Conversely, in *Neal v. State of California* (1960) 55 Cal.2d 11, 20, disapproved on other grounds in *People v. Correa* (2012) 54 Cal.4th 331, our Supreme Court held the defendant, who attempted to murder a couple by setting fire to their bedroom, could not

13

be punished for both arson and attempted murder. Section 654 prohibited such double punishment because his primary objective was to kill, and arson was simply the means of accomplishing that objective. (*Neal*, *supra*, at p. 20.)

C. *Analysis*

The trial court's refusal to stay count 2 under section 654 is not supported by substantial evidence. The evidence does not show I.D. harbored separate criminal objectives. The trial court specifically found that I.D. obstructed her mother's use of the telephone in order to prevent her mother reporting a probation violation. The evidence supports this finding. Officer Patron testified that I.D. first verbally attempted to dissuade her mother from calling the police while making an assaultive gesture. When her mother proceeded to call the police anyway, I.D. then took the phone from her mother's hands and ripped it off the wall. The obstruction of the telephone was the means of accomplishing I.D.'s objective to dissuade or prevent her mother from reporting a crime or probation violation to the police. The intent as to each crime was one and the same.

Despite its finding that I.D. obstructed the phone to prevent her mother reporting a probation violation, the court declined to stay the section 591 count. At the jurisdictional hearing, the court explained it did not think section 654 applied because the two counts did not "share an element . . . ." At the subsequent dispositional hearing, the court stated it "[did not] understand the argument for a [section] 654 [stay]" because "the elements of [the] offenses are not mutually inclusive . . ." and they were "two completely separate

14

crimes."  We agree with I.D. that those findings conflate the test for section 654 with the test for a necessarily included offense.

As I.D. contends in her reply brief, "the court appears to have concluded that section 654 does not apply where two crimes have separate elements."  I.D. is correct to say that whether two crimes share elements or whether one crime includes all the elements of another is the test for a necessarily included offense, which determines whether the defendant can be *convicted* of both crimes.  (See *People v. Reed* (2006) 38 Cal.4th 1224, 1227-1228.)  Section 654 pertains only to *punishment* of multiple convictions.  (*People v. Correa, supra,* 54 Cal.4th at p. 336.)  Generally, a defendant may be convicted of, but not punished for, multiple crimes arising out of the same course of conduct.  (*Id.* at p. 337.)  While section 654 certainly bars punishment for both the larger offense and its necessarily included offense, "the reach of section 654 is not limited, however, to necessarily included offenses."  (*In re Adams* (1975) 14 Cal.3d 629, 634.)  As exemplified in *People v. Kynette* (1940) 15 Cal.2d 731, 762, overruled on other grounds in *People v. Sharer* (1964) 61 Cal.2d 869, the offenses need not share elements.  In that case, the high court held section 654 precluded multiple punishments for attempted murder, assault with intent to murder, and malicious use of explosives even though the offenses had variable elements.  (*People v. Kynette, supra,* at p. 762.)  Thus, even though the two counts charged against I.D. do not share elements, section 654 still applies to bar multiple punishment.

The trial court further misconstrued the meaning of "objective" in making its decision.  Responding to I.D.'s counsel's statement, "if it's one object, then [section] 654

15

should apply," the court stated, "One object. It's one object in the phone, but the other one was to the mother." The test for an indivisible transaction under section 654 depends on the criminal intent and objective—the *goals* or *purposes*. It is irrelevant that I.D.'s actions impacted two separate physical "objects" (her mother and the telephone) unless she had a separate objective in each action involving those objects. However, the evidence shows she had the same intent in verbally dissuading her mother from calling the police and in injuring the phone— to prevent a report of her sister's probation violation. There is no evidence to suggest I.D. had any other objective in obstructing her mother's use of the phone.

Because I.D.'s acts were part of an indivisible course of conduct with a single criminal objective, her four-month sentence for the section 591 violation must be stayed.

III. *CONSTITUTIONALITY OF THE WEAPONS PROBATION CONDITION*

I.D. finally contends the weapons condition in her probation terms is unconstitutionally vague because it lacks an explicit knowledge requirement. She contends this defect in the condition could potentially result in her "unwittingly violat[ing] the condition by possessing something that she did not know was a weapon." We modify the condition to include an express knowledge requirement.

A. *Standard of Review*

Although I.D. did not object to the challenged condition below, her contention "is cognizable on appeal because it presents a pure question of law that may be resolved without reference to the sentencing record." (*People v. Moore* (2012) 211 Cal.App.4th 1179, 1183-1184, citing *In re Sheena K.* (2007) 40 Cal.4th 875. 887-888.) We review

16

constitutional challenges to probation conditions de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

B. *Applicable Legal Principles*

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.'" (*In re Sheena K., supra,* 40 Cal.4th at p. 890.) "A probation condition 'must be sufficiently precise for the probationer to know what is required of [her], and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*Ibid.*) "Where a probation condition prohibits . . . possession of items that are not easily amenable to precise definition, 'an express knowledge requirement is reasonable and necessary. . . .'" (*People v. Moore, supra,* 211 Cal.App.4th at p. 1185, quoting *People v. Kim* (2011) 193 Cal.App.4th 836, 845.)

C. *Analysis*

We note that other Courts of Appeal have split on the issue of whether to read an implied knowledge requirement into every probation condition. (Compare *People v. Patel* (2011) 196 Cal.App.4th 956, 960-961 [construing every probation condition to implicitly require to prohibited action to be done knowingly] with *People v. Moses* (2011) 199 Cal.App.4th 374, 381 [declining to read an implied knowledge requirement into all probation conditions].) The People urge us to follow the reasoning of *Moore*, which concluded that since the law punishes only those probationers who willfully and knowingly violate their probation, one who lacks knowledge that she is in possession of a weapon cannot be considered to have violated her probation. (*People v. Moore, supra,* at

17

pp. 1186-1187.)  Thus, the People contend that adding an express knowledge requirement has little effect because I.D. is protected from punishment for innocent possession. Conversely, I.D. urges us to follow *People v. Garcia* (1993) 19 Cal.App.4th 97, 102, which noted the importance of constitutional rights in relation to probation conditions "should not be left to implication."

A vague probation condition, however, is "easily remediable on appeal by modification . . . ."  (*In re Sheena K., supra,* 40 Cal.4th at p. 888.)  Instead of reading an implied knowledge requirement into all probation conditions, we direct the trial court to modify the specifically challenged probation condition to include the word "knowingly" as set forth in the disposition.  (See *People v. Moses, supra,* 199 Cal.App.4th at p. 381.)

## DISPOSITION

The judgment is modified to stay the execution of the four-month sentence imposed for obstruction of the telephone (count 2; § 591).  We direct the trial court to modify its minute order imposing I.D.'s probation conditions to include the italicized language in the pertinent probation conditions as follows:  "The minor shall not *knowingly* use, possess, transport, sell or have in or under his/her control any firearm,

18

replica, ammunition or other weapon, including a knife, any explosive, or any item intended for use as a weapon, including hunting rifles or shotguns."

In all other respects, the judgment is affirmed.


NARES, Acting P. J.

WE CONCUR:

McINTYRE, J.

O'ROURKE, J.