Filed 2/2/16 P. v. Smith CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>COREY SMITH,<br><br>    Defendant and Appellant. | D067802<br><br><br><br>(Super. Ct. No. SCE335517) |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald Frazier, Judge.  Affirmed with directions.

Johanna S. Schiavoni, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

INTRODUCTION

A jury found Corey Smith[1] guilty of burglary in the first degree of an inhabited dwelling (Pen. Code, §§ 459, 460; count 1),[2] burglary (§ 459; count 2), receiving stolen property (§ 496, subd. (a); count 3), and attempting to dissuade a witness from prosecuting a crime (§ 136.1, subd. (b)(2); count 4). In a bifurcated proceeding, the court found true penalty enhancement allegations Smith committed count 1 while released from custody on bail on two prior felony cases (Super. Ct. San Diego County, case Nos. SCE330373 & SCE329030) (§ 12022.1, subd. (b).) The court sentenced Smith to an aggregate term of eight years and eight months based on the middle term of four years for count 1 with a two-year enhancement pursuant to section 12022.1, subdivision (b), for a principal term of six years plus consecutive terms of one-third the middle term of two years (eight months) for count 2 and two years for count 4. The court stayed punishment for count 3 pursuant to section 654.

Smith appeals. His appointed appellate counsel filed a brief requesting we independently review the record for error. (See *People v. Wende* (1979) 25 Cal.3d 436,

---

[1]    There are inconsistencies in the record as to the defendant's name. The felony complaint and amended information identifies him as "Corey Smith … aka Lonnie Corey Smith." The verdict forms and abstract of judgment refer to him as "Lonnie Corey Smith." Defendant signs his name and refers to himself as "Lonnie Smith." The notice of appeal refers to him as "Corey Lonnie Smith" and other superior court documents refer to him as "Corey Smith" or "Corey L. Smith." In light of these inconsistencies, we remand the matter to the trial court for a determination of the defendant's true name and, if necessary, correction of the abstract of judgment.

[2]    Further statutory references are to the Penal Code unless otherwise indicated.

441-442.) Having done so and having identified no reasonably arguable appellate issues, we affirm the judgment.

BACKGROUND

A

*Count 1*

In October 2013, Christopher Allen was doing some renovations to a home he owned in Lemon Grove, California. The home consisted of a front and back structure connected with a roof. He and other individuals stayed at the residence almost every night while they worked on the residence, moving back and forth between the buildings depending on the renovations. They slept on mattresses and kept food, personal belongings, and construction tools at the residence.

Allen left the residence on the night of October 14, 2013, to stay with his parents to do laundry and take his fiancée to the airport the following morning. When he left, all his tools were in place. No one stayed at the home that night.

During the day on October 15, 2013, Allen's neighbor saw a truck pull up to Allen's house with two men he did not recognize. The neighbor started taking pictures because things did not feel right. The neighbor described "one big Black male and one smaller Black male" who went around the house and quickly started taking boxes, tools, and a ladder from Allen's property. The neighbor said the men "cleaned up, loading up like it was their stuff." He saw the men make at least four trips to the back of the house, emerge with property, and place it in the truck. He indicated they were very quick and efficient. They were only at the residence three or four minutes. The photographs

3

showed the two men acquiring a ladder and putting it in their truck. The neighbor also photographed the truck's license plate.

When Allen returned to the residence later on October 15, he noticed his ladder was missing and saw the garage adjoining the back house had been broken into. The external door and frame were damaged and the door was open. More than $3,000 worth of tools were missing. Allen reported the crime to the police and officers came out to investigate.

The following day, the neighbor approached Allen and said he had taken photographs of two suspicious men who had parked a truck in Allen's driveway and appeared to be walking off with Allen's tools. The neighbor gave Allen a disc with the photos, which Allen provided to the police.

The San Diego County Sheriff's Department discovered the truck was registered to Smith. The detective assigned to the case learned Smith was in custody and interviewed Smith in jail about the burglary. The detective told Smith he was "investigating the burglary and that [he] had evidence in the case, photographs in the case that showed [Smith] at the location of the burglary" along with his truck and another individual. He mentioned the photographs showed an orange ladder in the back of Smith's truck.

After meeting with Smith, the detective listened to two telephone calls Smith made from jail to the other individual the detective had identified from the photographs. Excerpts of the conversations were played for the jury and they were provided with transcripts. The detective identified the voices in the telephone conversations. Smith asked the other individual, "Hey, you remember the sh-- that we did with the … that had

4

that orange thing on the back of the truck … ?"  He then said, someone "flicked us up," which the detective testified is vernacular for saying someone had taken photographs of them.  During a second telephone call, Smith said, "Even with the flicks, I already figured how we gonna say … how we gonna get out of that …."  He then went on to say, "You remember when we went around the side in the back so nobody could see what we actually, the entrance and that, you know what I'm sayin'[?]"

B

*Counts 2 and 3*

Early on the morning of November 9, 2013, a witness heard the sound of a different vehicle on Hershey Street in San Diego and got up to check it out.  He saw a multi-colored pickup truck and an African-American male wearing a baseball hat and a sports jacket going through the back of a neighboring house, which was undergoing some construction.  He saw the lights go on in the kitchen.  Through the window, the witness was able to see the man gathering tools.  The man opened the front door, ran, and put the construction tools in the back of his truck.  The witness called 911 before the man left.  The witness wrote down the license plate number, which he gave to the dispatcher.

The San Diego police officer who responded to the 911 call inspected the premises, which was a vacant house under construction.  A side door appeared to have been pried open.  He identified the owners of the home as Aaron and Hannah Armstrong and called them.  The owners and Paul Jaime, a plumber who was working on the house, met the officer at the property.  They noticed the metal security door for a side door,

5

which was behind a private fence, had been pried open. They also noticed various tools were taken from the garage, including power tools, hand tools, and a toolbox.

After learning that the license plate number of the truck was registered to Smith at an address on Juhn Street in Spring Valley, the officer took Mr. Armstrong and Jaime to the Juhn Street address.[3] They saw a truck parked across the street that matched the license plate number reported on the 911 call. The officer located tools in the back of the truck as well as tools in an orange bucket and a black toolbox from inside the residence. Mr. Armstrong and Jaime identified some of the tools as theirs, including tools with Jaime's name or unique markings. Mr. Armstrong testified the value of the items stolen was over $1,000.

C

*Count 4*

A few days later, someone approached the Armstrong property, spoke with a worker on the property, asked to make contact with the owner, and left a phone number. Mr. Armstrong wanted to distance himself from the situation, so he turned the information over to an officer of the San Diego police department.

The officer followed up with the worker and learned a pickup truck with three males came to the Armstrong property and dropped off some of the stolen tools. One of the men, who identified himself as Anthony, said his brother committed the crime and wanted to make things right by arranging with the homeowner to return the tools in

---

[3] Another officer made contact with Smith at the Juhn Street address and identified him in court.

consideration for having the charges dropped.  The individuals left a phone number, which the worker provided to Mr. Armstrong, who in turn provided it to the police officer.

The officer called the number and heard an outgoing voicemail message for Smith. The officer called a second time, pretended to be Aaron Armstrong, and arranged a meeting for the following day at a local 7-Eleven store.  Smith came to the meeting with his friend (who he later called from jail).  During the meeting, the investigating officer represented himself as Mr. Armstrong and another officer presented himself as the plumber.  The friend began the conversation and identified himself as "Anthony" saying he wanted to make things right and return the property his brother stole.  Smith interrupted and, at one point, also identified himself as the brother of the person who stole the tools.

Smith said he did not have the tools with him, but wanted to "do the right thing and keep his brother from going to jail."  Smith offered Officer Ferguson "gift cards in any amount to any store."  He also offered kitchen appliances, a refrigerator, and a dishwasher.  This made Officer Ferguson wonder how Smith knew the house needed kitchen appliances if Smith had never been to the Armstrong house.

The officer said, "Well, I want my stuff back, but what if I don't agree?"  Smith replied saying, "I am not going to lie.  I would like you to consider dropping the charges against my brother."  When the officer asked what Smith would do if he did not agree, Smith again talked about a gift card and appliances, but ultimately said, "Well, I guess I will have to walk away.  At least I tried to convince you."

7

Smith said the tools were located in a storage locker to which he did not have a key, but he would do his best to recover the items if he was given a list. When Smith tried to leave, the officers arrested him.

D

*Enhancement Allegations*

The court granted Smith's motion to bifurcate trial of the "on bail" enhancement allegations and Smith waived trial by jury on the enhancements. The court found Smith previously pled guilty on October 7, 2013, to two felony burglaries in violation of section 459 in case No. SCE330373 and case No. SCE329030. After entering his change of plea, Smith was free on bail until he was sentenced in both cases on November 6, 2013. The parties stipulated the count 1 burglary alleged in the present case took place on October 15, 2013. As a result, the court found Smith committed the felony offense in count 1 while he was released from custody on bail pending final judgment of the two earlier felony offenses in violation of section 12022.1, subdivision (b). The court formally revoked probation in both underlying cases.

E

*Sentencing*

In sentencing Smith to state prison for an aggregate term of eight years eight months, the court explained its reasons for selecting the middle base term for count 1 (first degree burglary of the Allen dwelling): "The defendant's prior convictions. The defendant was on probation … when the crime was committed. The defendant's prior performance on probation was unsatisfactory. [¶] This is evidenced by his probation

8

being revoked on numerous occasions in his ongoing and continuing criminal behavior. [¶] However, even though there are no real factors in mitigation, and that all factors are in aggravation, the factors do not appear to be of sufficient weight to justify deviation from the middle term for any of the counts." The court added a two-year enhancement to the principle term pursuant to section 12022.1, but dismissed punishment for the second enhancement under section 12022.1 pursuant to section 1385 stating the court felt "one [two]-year enhancement added to the base term is sufficient, given the facts of the case."

As to count 2 (second degree burglary of the Armstrong property), the court sentenced Smith to eight months, which is one-third the middle term of two years, based on the "defendant's numerous prior convictions [and] the defendant was on probation in [two cases] when the crime was committed." Since the crime in count 2 was independent of count 1, the court determined the term should run consecutive to the principal term. Because the conduct in count 3 (receiving stolen property) applied to the same set of operative facts as count 2, the court sentenced Smith to one-third the middle term of two years, but stayed punishment for count 3 pursuant to section 654.

As to count 4 (dissuasion of victim/witness), the court selected the middle term of two years for the same reasons it relied upon for count 1. The court noted, pursuant to section 1170.15, the sentence was required to be a full strength consecutive middle term.

## DISCUSSION

Smith's appointed appellate counsel filed a brief summarizing the facts and proceedings below. Counsel presented no argument for reversal and instead requested we review the record for error as mandated by *People v. Wende*, *supra*, 25 Cal.3d at

9

pp. 441-442. To aid our review, and consistent with *Anders v. California* (1967) 386 U.S. 738, 744, counsel identified 15 possible appellate issues:

(1) Did the trial court err in declining to instruct on petty theft as a lesser included or lesser related offense of burglary after it concluded petty theft was not a lesser included offense of the burglary? (*People v. Tatem* (1976) 62 Cal.App.3d 655, 658 [by definition "petty theft (or theft of any kind) is not a necessarily included offense of burglary because burglary can be committed without committing theft"]; see *People v. Birks* (1998) 19 Cal.4th 108, 112-113.)

(2) As applied in this case, is section 136.1, subdivision (b)(2), unconstitutional in violation of the First Amendment because it impermissibly inhibits free speech? (*People v. Navarro* (2013) 212 Cal.App.4th 1336, 1348-1349 (*Navarro*) ["California has a strong governmental interest in supporting and protecting citizens who wish to report violations of its criminal laws"]; see *People v. McDaniel* (1994) 22 Cal.App.4th 278, 284 ["[u]nless the defendant's acts or statements are intended to affect or influence a potential witness's or victim's testimony or acts, no crime has been committed under [§ 136.1]"].)

(3) Is section 136.1, subdivision (b)(2), fatally uncertain and unconstitutionally vague in violation of the First Amendment because it fails to give sufficiently clear notice to members of the public as to what conduct is prohibited, risks arbitrary and discriminatory application, and/or inhibits free speech? (*United States v. Williams* (2008) 553 U.S. 285, 304 [128 S.Ct. 1830, 1845, 170 L.Ed.2d 650, 670] [" 'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity' "]; *Barela v. Superior Court* (1981) 30 Cal.3d 244, 252 ["every citizen has a

10

right protected by state law to report criminal violations to the police"]; *Navarro, supra,* 212 Cal.App.4th at p. 1353 ["[t]he words used in [§ 136.1] are clear and give notice to members of the public that attempting to prevent or dissuade a person from contacting authorities to report a crime is itself a crime"]; *People v. Velazquez* (2011) 201 Cal.App.4th 219, 233 [§ 136.1, subd. (b)(2), "encompasses more than prearrest efforts to dissuade … it includes attempts to dissuade a victim from causing a complaint or information to be prosecuted or assisting in that prosecution"].)

(4) Did the trial court commit instructional error as to the section 136.1 offense by instructing only with CALCRIM No. 2622 and not with CALCRIM No. 2623? (See CALCRIM Nos. 2622 & 2623, Bench Notes [CALCRIM No. 2623 given only if the defendant is charged with a felony based on § 136.1, subd. (c)]; *People v. Ortiz* (2002) 101 Cal.App.4th 410, 416 [dissuading a victim is a felony under § 136.1, subd. (c), "if the perpetrator tried to dissuade by using force or the threat of force"].)

(5) In light of the evidence at trial, was there sufficient evidence at trial to convict Smith on the first degree burglary charge vis-a-vis the Allen property? (§§ 459 [a "person who enters any house, room, apartment, … or other building … with intent to commit grand or petit larceny or any felony is guilty of burglary"], 460, subd. (a), ["burglary of an inhabited dwelling house … or the inhabited portion of any other building, is burglary of the first degree"].)

(6) Was there sufficient evidence to convict Smith on the second degree burglary charge vis-a-vis the Armstrong property? (§§ 459 [a "person who enters any house, room, apartment, … or other building … with intent to commit grand or petit larceny or

11

any felony is guilty of burglary"], 460, subd. (b), [burglary other than that defined in § 460, subd. (a), is of the second degree].)

(7) Was there sufficient evidence to convict Smith on the charges of receiving stolen property? (§ 496, subd. (a), [a person "who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained" is guilty of receiving stolen property].)

(8) Was there sufficient evidence to convict Smith of attempting to dissuade a witness from prosecuting a crime, where the witness/victim was not the actual witness/victim, but an undercover police officer, and where Smith's comments were not made with menace, duress, threats, or implied violence? (§ 136.1, subd. (b)(2); see *People v. Velasquez, supra*, 201 Cal.App.4th at p. 230 ["the prosecution must establish that the defendant, with the specific intent to do so, dissuaded or attempted to dissuade a witness or victim from '[c]ausing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof' "]; *People v. Foster* (2007) 155 Cal.App.4th 331, 335-337 ["[t]he statute neither restricts the means a defendant selects to commit the offense, nor does it require that defendant personally deliver the message to the witness. A threat need not actually deter or reach the witness because the offense is committed when the defendant makes the attempt to dissuade the witness"]; *Navarro, supra*, 212 Cal.App.4th at p. 1353; see *People v. Fernandez* (2003) 106 Cal.App.4th 943, 951 ["punishment … increases when the crime is

12

accomplished by aggravated means such as the threat of force or violence or the promise of pecuniary gain"].)

(9) Are the theft related offenses eligible for reduction under Proposition 47? (§ 490.2 ["obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor"]; *People v. Dingle* (1985) 174 Cal.App.3d 21, 29-30 [any theory of theft satisfies the larcenous intent required for burglary]; *People v. Nguyen* (1995) 40 Cal.App.4th 28, 30-31 [same].)

(10) May a defendant be convicted of both burglary in violation of section 459, and of receiving stolen property in violation of section 496, with respect to the property he stole in the burglary? (*People v. Allen* (1999) 21 Cal.4th 846, 857, 866-867 [a " 'defendant who is convicted of burglary is not convicted of stealing any property at all' " therefore "a defendant may be convicted both of burglary and of violating section 496 with respect to property he stole in the burglary"].)

(11) Was trial counsel ineffective for not seeking severance of the different offenses against different victims? (*People v. Valdez* (2004) 32 Cal.4th 73, 119 [" 'Offenses "committed at different times and places against different victims are nevertheless 'connected together in their commission' when they are … linked by a ' "common element of substantial importance" ' "]; *People v. Mendoza* (2000) 24 Cal.4th 130, 160-161 [same]; *People v. Lucky* (1988) 45 Cal.3d 259, 276-277 [when the statutory requirements for joinder are met, appellant can establish abuse of the trial court's discretion in denying severance only on a clear showing of prejudice]; *People v. Matson*

13

(1974) 13 Cal.3d 35, 39 [common modus operandi is a common element of substantial importance]; *People v. Marshall* (1997) 15 Cal.4th 1, 27-28 [a determination that evidence is cross-admissible in separate trials "ordinarily dispels any inference of prejudice" in failing to sever]; *Coleman v. Superior Court* (1981) 116 Cal.App.3d 129, 135.)

(12) Was trial counsel ineffective for not objecting to the use of CALCRIM No. 376 instruction, though it required only slight supporting evidence? (CALCRIM No. 376; *People v. Solorzano* (2007) 153 Cal.App.4th 1026, 1035-1036 ["case law is settled that requiring only slight corroborating evidence in support of a permissive inference, like the one that possession of stolen property creates, neither changes the prosecution's burden of proving every element of the offense nor otherwise violates the right to due process if, as here, the conclusion suggested is one that common sense and reason can justify 'in light of the proven facts before the jury' "]; *People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1575-1577.)

(13) Was trial counsel ineffective for conceding the wobbler offense[4] was a felony, subject to section 1170.15, rather than arguing the trial court should exercise its discretion to find only a misdemeanor and sentence the offense accordingly? (§ 1170.15 ["if a person is convicted of a felony, and of an additional felony that is a violation of [§] 136.1 … and that was committed against the victim of, or a witness or potential

---

4 " '[A] wobbler is a special class of crime which could be classified and punished as a felony or misdemeanor depending upon the severity of the facts surrounding its commission.' " (*People v. McElroy* (2005) 126 Cal.App.4th 874, 880, fn. 2 (*McElroy*).)

14

witness with respect to, or a person who was about to give material information pertaining to, the first felony … , the subordinate term for each consecutive offense that is a felony described in this section shall consist of the full middle term of imprisonment for the felony for which a consecutive term of imprisonment is imposed"]; *McElroy*, *supra*, 126 Cal.App.4th at p. 880 [a "wobbler offense charged as a felony is regarded as a felony for all purposes until imposition of sentence or judgment" and "[i]f state prison is imposed, the offense remains a felony"]; *People v. Fernandez* (2003) 106 Cal.App.4th 943, 950 ["[e]fforts to influence the contents of a witness's testimony are generally punishable as misdemeanors" whereas "[e]fforts to prevent a [victim] from reporting a crime … are punished more severely, either as wobbler offenses … or as straight felonies"]; *People v. Sillas* (2002) 100 Cal.App.4th Supp. 1, 3.)

(14)  Did the trial court abuse its discretion in (a) imposing the middle base term of four years as to count 1 (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 978 (*Alvarez*) [the court's sentencing discretion is informed by factors such as " 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial" as well as the public interest; a determination exceeds the bounds of reason only if it is "outside the perimeters drawn by individualized consideration of the offense, the offender, and the public interest"]); (b) imposing an eight-month term to run consecutive to the principal term as to count 2 (*Ibid*); or (c) sentencing count 4 as a felony and imposing a two-year term to run consecutive to the principal term under section 1170.15, rather than reducing the offense to a misdemeanor?  (§ 1170.15;

15

*McElroy*, *supra*, 126 Cal.App.4th at p. 880, citing *People v. Banks*, *supra*, 53 Cal.2d at p. 381; *People v. Sillas*, *supra*, 100 Cal.App.4th Supp. at p. 3; *People v. Ortiz*, *supra*, 101 Cal.App.4th at p. 416; see *Alvarez*, *supra*, 14 Cal.4th at p. 978 [the court's broad discretion to impose punishment as a felony or misdemeanor pursuant to § 17, subd. (b), is subject to the individualized factors directing similar sentencing decisions].)

(15) Did the court err in failing to strike the remaining on bail enhancement, and instead, imposing an additional two-year sentence on that enhancement? (§ 12022.1, subd. (b); *People v. Johnson* (2012) 208 Cal.App.4th 1092, 1100 ["[§] 12022.1 is a recidivist statute—it enhances punishment based upon the defendant's commission of another offense while on bail for a previous offense"]; *People v. Augborne* (2002) 104 Cal.App.4th 362, 377 ["[e]nhancements which describe the nature of the offender such as those pursuant to [§] 12022.1 are imposed only once in a particular case"].)

We granted Smith permission to file a supplemental brief on his own behalf. He did not do so.

As requested by counsel, we reviewed the record for error and did not find any reasonably arguable appellate issues. Smith has been competently represented by counsel on this appeal.

DISPOSITION

The judgment is affirmed.  In light of inconsistencies in the record, the matter is remanded to the trial court to determine the defendant's true name and, if necessary, to correct the abstract of judgment in that regard.


McCONNELL, P. J.

WE CONCUR:


NARES, J.


IRION, J.

17